Thomson, J.,
delivered the opinion of the court.
The allegations of the complaint are that on October 20, 1884, plaintiff George S. Redfield and one Warner made their promissory note to one T. C. Henry for $6,400, due five years from date, with interest payable semiannually at ten per cent per annum, and secured it by a deed of trust upon certain land owned by them; that after the giving of the note the plaintiff purchased from Warner his interest in the real estate, and assumed the payment of the trust deed; that the sole consideration of the note was a title to eight water rights, to be secured to the makers by The Fort Morgan Irrigation Company and the defendant, The Travelers Insurance Company, the water to be taken from the canal of the Irrigation Company, and used in the irrigation of their lands; that the Irrigation Company had contracted a bonded indebtedness of $60,000, secured by deed of trust upon all of its property, executed to Gustavus F. Davis, vice president of the Insurance Company, as trustee, and that this company was the owner of all the bonds so secured ; that by a provision in the trust deed the Irrigation Company was authorized to sell water rights, and the trustee might issue to the purchaser a release of those purchased by him from the lien of the trust deed; that Henry was the agent of the Insurance Company, and while he was the nominal payee of the note, the Insurance Company was the real party in interest, and *192 was the principal in the transaction ; that the note was made payable to him and was by him indorsed to it, at its request; that it agreed in consideration of the making of the note to cause the trustee to release the water rights to be obtained from the Irrigation Company from the lien of the trust deed; that the Irrigation Company duly conveyed these rights to the plaintiff and Warner; but having made default in the payment of its bonds, all of its property, including the eight water rights so conveyed, was sold under the deed of trust made by it, the Insurance Company being the purchaser at the sale; that the latter company then caused to be incorporated The Fort Morgan Land and Canal Company, and caused the property purchased by it, including the plaintiff’s water rights, to be conveyed to the new company; that after-wards, in settlement of a dispute which had arisen concerning water rights purchased, an agreement was entered into between the parties to the dispute, by which, in so far as it affected the rights of the plaintiff, the Canal Company and the Insurance Company agreed to convey to the plaintiff his eight water rights bjr a good and sufficient conveyance ; that on the day on which this agreement was made the Canal Company issued its bonds in the sum of $120,000, with interest at ten per cent, and secured them by a deed of trust to Davis upon all of this property, including the water rights contracted to the plaintiff, of which bonds the Insurance Company became the owner and holder; that the Canal Company, in turn, made default, its trust deed was foreclosed, and the Insurance Company again became the purchaser, the purchase including the water rights in question; that the Insurance Company thereupon caused to be incorporated The Fort Morgan Land and Water Supply Company, and conveyed to it the property purchased, including these water rights, receiving in payment all the .capital stock of the Supply Company, which stock the Insurance Company still owns and holds; that the Insurance Company never caused any release to be made to the plaintiff of the water rights conveyed by the Irrigation Company, and by reason of the sale *193 of its property under its trust deed the conveyance made by it became a nullity; that no conveyance was ever made under the agreement of settlement with the Canal Company, and the Insurance Company; that the Insurance Company had often promised to carry out its agreement with the plaintiff, but no conveyance of the water rights had ever been, made to him, although it was always within the power of the Insurance Company to cause the conve3'-ance to be made, and that the plaintiff ivas still without title to these rights; that in fraud of plaintiff’s rights, and for the purpose of defrauding him of his right and title to the water rights, and without giving him any consideration for the promissory ote, the Insurance Company had advertised the land for sale under the trust deed, and was about to sell the same; and that the plaintiff was read}', able and willing to pay the note and interest in full, if the Insurance Company would perform its agreements with him, and cause him to be invested with the title to his water rights. The prayer, was for an injunction against the foreclosure of the trust deed,- and for its cancellation, and that of the note which it secured.The defendant’s answer set forth two defenses. The first denied as follows: That T. C. Henry was- the defendant’s, agent; that the defendant agreed to take the water in pa3rment for water rights; that the note was. made to Henry or indorsed by him to it, at its request; that any part of -the transaction was conducted with Henry as its agent; that the defendant was the principal in the transaction, in tire sense that Henry was its agent; that the note was given in payment of water rights; that the consideration of the note was an agreement for the conveyance of water rights to the plaintiff and Warner by the defendant and the Irrigation Company free from the lien of the deed of trust; that the defendant failed to deliver to the plaintiff the release of Davis, trustee, to the water rights conveyed by the Irrigation Company^ or, that any part of the consideration of the note was an agreement-to do so; that in the agreement of settlement there was a provision that the Land and Canal Company and- the, *194 defendant should convey the water rights to the plaintiff by a good and sufficient conveyance, or that the defendant ever promised to cause the water rights to be conveyed to the plaintiff. The second defense averred that the plaintiff and Warner first applied to T. C. Henry as their agent to procure for them a loan of $6,400, offering to secure the loan by a trust deed upon their real estate, representing that they had a contract for eight water rights, the same being sufficient for the irrigation of the land offered as security, and that the money was wanted to pay for these water rights, and further offering two additional water rights as security for the loan; that Henry forwarded the application to the defendant and requested it to make the loan, but for certain reasons the defendant hesitated to entertain the application; that the plaintiff and Warner then made the note payable to Henry, under some arrangement whereby he was to have the use of the money as a loan from them to him, and delivered the note to him; that on the 29th day of October, 1884, Henry presented the note secured by the deed of trust to the defendant at its office in Hartford, Connecticut, and offered it as security for a loan from the defendant to him; that it accordingly loaned him an amount of money equal to the face value of the note, and he indorsed the note to it; that the note, being payable to him, and he representing himself as its owner, and authorized to dispose of it as he might see fit, the defendant knowing nothing to the contrary, dealt with him as the owner; that having afterwards learned that the land securing the note had no water rights belonging to it, for the sole purpose of making its security for the note good and not in pursuance of any promise or agreement to do so, the defendant procured the Irrigation Company to convey to the plaintiff for the use of the land eight full water rights; that these water rights still attached to the land, and that he had, ever since their conveyance to him, been in their use and enjoyment without cost to him; that he had never offered to reconvey them, and that his title and possession had never been menaced or threatened in any way. The answer *195 also avers that the defendant had procured The Fort Morgan Land and Water Supply Compalty to execute to the plaintiff its release deed to the water rights claimed, which deed the defendant brought into court and tendered to the plaintiff.
A demurrer to the second answer, on the ground of insufficiency, was sustained. No leave was taken to amend or plead further. Afterwards, pursuant to an order made by the court some time prior to the filing of the answer, the plaintiff filed a cross complaint, setting up the trust deed and note, and praying a decree of foreclosure.
Upon the assumption that the complaint is sufficient to authorize a decree of cancellation, the second answer states -a good defense. If its averments are true, the defendant was an innocent holder of the note. It advanced the money to Mr. Henry on the faith of its ownership by him. Whatever agreement the makers had with Henry, they invested him with the apparent title to the note, and if the defendant dealt with him in the belief that he owned it, it took the note unaffected by ány agreement between him and the makers. The answer also alleges that the plaintiff had been in the free and undisturbed use and enjoyment of the water rights for which he claims the note was given ever since their conveyance to him by the Irrigation Company. As shown by the record, the time between the conveyance and the filing of the answer was nearly seven years. If this averment is true, there can be no decree for cancellation or rescission in this action, because the complaint contains no offer to account or pay for the use which the plaintiff has had of the water rights. He who asks equity must do equity. The plaintiff cannot repudiate his contract and still retain the benefits which he has derived from it, and his desire to restore what he has received must appear in his complaint, or he has no standing in a court of equity.
The objections made in argument to this answer couple it with the first defense. Inconsistency between the two, and redundancy, are asserted. Neither of these is a ground of demurrer. The only ground for demurrer to an answer *196 under the code is insufficiency. Each answer is a separate defense, complete within itself, and must be tested by its own allegations. Vices other than insufficiency are reached by motion. As we have seen, this answer, considered by itself, contains averments which, if true, would defeat the action, and the demurrer was therefore improperly sustained.
But it is urged that by subsequently filing its cross complaint the defendant waived the error committed in sustaining the demurrer. We have no controversy with counsel’s general statement of the rule invoked. A party against whom a demurrer is sustained, by pleading over, precludes himself from complaining of the ruling on the demurrer. The right to further plead in such case is given by section 71 o£ the code, which provides that after a demurrer is decided the unsuccessful party may plead over, or amend, upon such terms as may be just, and within a time to be fixed by the court or judge. Therefore, to authorize a party to plead or amend, there must be ah order of the court prescribing the terms upon which the pleading may be filed, or the amendment made, and fixing the time within which it shall be done ; and the order comes after the ruling upon the demurrer. Upon the sustaining of this demurrer, no order relating to amendment or pleading was made, and none was asked. The cross complaint was filed in pursuance of an order made long prior to that time, and before the filing of anj'- answer in the case. It is not in the nature of a defense to the action at all. It is an independent proceeding by the defendant against the plaintiff for affirmative relief upon the trust deed, and in which the defendant is the real plaintiff, and the plaintiff the real defendant. In equity practice a defendant could obtain relief of that kind only bjr filing a cross bill; and while, under our code, such a bill passes under the general name of counterclaim, its characteristics and purposes are the same as under the practice in equity. It is not properly an answer. The decision upon the demurrer had nothing to do with the filing of the pleading in question. Under the order'permitting it, it could have been filed if the-demurrer *197 had been overruled, or if there had been no demurrer. It was therefore not a pleading over, within the meaning of the code, and by filing it the defendant waived no right of objection to the ruling upon the demurrer.
But there is another feature of the answer which requires attention. It contains a tender to the plaintiff of a release deed from the Supply Company to him for the eight water rights which he claims to have purchased. He states in his complaint that the note was given in consideration of title to these water rights, and bases his claim to relief upon the refusal of the defendant to execute its agreement with him, by investing him with title. It also appears from the complaint that the Supply Company was the absolute owner of the property, and could convey a perfect title. This being the conceded fact, if it is true, as alleged in the answer, that the plaintiff has had the constant and unmolested' use and enjoyment of that for which he contracted, he was bound to accept the deed, and there could be no cancellation. The policy of the law is to sustain contracts, not to destroy them; and if the withholding of the title resulted in no injury to the plaintiff in the intermediate time, the execution to him of a sufficient deed before final decree, giving him all that he purchased, placed him in the exact situation contemplated when the contract was made, and disentitled him to the relief praj^ed. Davidson v. Moss, 5 How. (Miss.) 673; Wickliffe v. Lee, 6 B. Monroe, 543; Hunt v. McConnell, 1 Mon. 219; Evans v. Bolling, 5 Ala. 550; Boyce v. Grundy, 3 Pet. 210; Ayers v. Mitchell, 3 Smed. & Mar. 683.
But we do not think that the allegations of the complaint are sufficient to sustain a decree of cancellation. It is not averred that the execution of the note and deed of trust was induced by any fraudulent representations or conduct on the part of the defendant. Nothing in the nature of mistake or accident is set forth. There is no allegation that after the execution of the instruments, the defendant, by conveyance to an innocent purchaser, or otherwise, put it out of its power to perform its contract; on the contrary, it is expressly and *198 affirmatively stated that it was always within the power of the defendant to cause the water rights to be conveyed to the plaintiff. It is not alleged that he sustained any injury on account of his failure to receive his title, or that by reason of the defendant’s acts, or refusal to act, he lost any remedy upon the contract. It is averred that the defendant was proceeding in fraud of the plaintiff’s rights to sell the property without giving him his title, but it also appears that the sale had not been consummated, and that the way was still open before him to compel the performance of the agreement. So long as a party is able to obtain the full benefits of his contract by its enforcement, it will not be canceled or rescinded at his suit.
We think, however, that the bill contains sufficient averments to entitle the plaintiff to specific performance, and that upon the establishment of the case which it states the court would be authorized to grant relief of that kind, provided the necessary parties were before it. The title to the property is alleged to be in The Fort Morgan Land & W ater ■Supply Company, which is not a party to this proceeding; and until it is made a party, and brought in, no adequate relief in this direction can be afforded. But the complaint, as it is, is answered by a tender of performance. The deed to which the plaintiff avers himself to be entitled is brought into court and offered to him. This obviates the necessity of a decree for performance. The contract should be adjudged performed, and the defendant, unless its money shall be paid, permitted to proceed to a foreclosure of its trust deed upon its cross complaint. The effect of the tender of the deed is to admit a cause of action in the plaintiff for specific performance, and the costs of the proceeding, down to the time of filing the answer, should therefore be adjudged against the defendant. The judgment is reversed and remanded with instructions to the court below to conduct any further proceedings in the case in accordance with this opinion.
• Reversed.