POTTER et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. April 13, 1903.)

No. 1,822.

1. CONVERSION OF TIMBER—MEASURE OF DAMAGES.

The measure of damages for the conversion by an innocent purchaser from a willful trespasser is the value of the property converted at the time of the purchase.

2. SUPERFLUOUS OR INAPPLICABLE INSTRUCTIONS—REFUSAL TO GIVE.

In an action of conversion against the purchasers of timber from one who cut it and removed it from public land under a claim of a homestead, the court charged the jury that if the homesteader made his entry and cut and removed the timber in good faith, with an honest intention to make his home on the land, and to acquire a homestead in it in compliance with the acts of Congress, the plaintiff could recover no damages; but that if he made the entry and took the timber in bad faith, with the intent to use the claim of a homestead as a screen and subterfuge to strip the land of its timber, the United States was entitled to recover the value of the timber at the time he sold it to the defendants.

Held, it was not reversible error for the court to refuse to instruct the jury that, if the homesteader and the defendants believed that the former had a right to cut and sell the timber when he did so, the measure of damages would be the value of the timber in the trees, because if, under the charge, given by the court, the homesteader made his entry and took the timber with the intention of using his homestead claim to strip the land of its timber, he could not have believed that he had the lawful right to do so, and the true measure of damages was the value of the timber when the defendants purchased it; if, on the other hand, the homesteader took it with the honest intention of perfecting his home and his claim under the law, the plaintiff sustained no damages, so that the refusal of the requested instruction could not have inflicted any injury upon the defendants, and error without prejudice is no ground for reversal.

3. PUBLIC LAND—FINAL CERTIFICATE—ACTION FOR WASTE.

The issue of a final certificate to land to an entryman estops the United States from recovering from him or his grantee for timber taken from the land, or waste committed thereon, during the pendency of the entry.

4. SAME—FRAUD IN PROCUREMENT.

But a final certificate of entry of public lands obtained by and canceled for fraud will not estop the United States from recovering of the grantee, or of the vendees of the grantee, who had notice of the fraud, for the conversion of the logs or ore wrongfully taken from the land by the grantee before the cancellation of the certificate.

**5. SPECIAL AGENT OF GOVERNMENT HAS NO AUTHORITY TO ESTOP IT.**

The presumption is that a special agent of the government, whose authority is not disclosed, is without power to estop the United States from asserting its legal rights.

**6. APPEAL—REVIEW—EXCEPTION TO RULING INDISPENSABLE.**

It is indispensable to the review in an appellate court of a ruling of the court below on the admissibility of evidence that it should have been challenged by an exception.

(Syllabus by the Court.)

In Error to the District Court of the United States for the District of Minnesota.

Jno. Jenswold, Jr., for plaintiffs in error.

Charles C. Houpt, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. This is an action by the United States against W. Potter & Co., a copartnership composed of Warren Potter and Patrick Casey, for the conversion within the boom limits of the Mississippi river of 384,330 feet of pine timber of the value of $6 per thousand feet, which had been taken from the north half of the northeast quarter of section 12, in township 53 north, of range 26 west, in the state of Minnesota. The defense was that in the year 1894 one William Byerla entered the land under the homestead laws of the United States, and commenced to reside upon and improve it for the purpose of securing title thereunder; that with this purpose he cut the pine timber upon the tract, and floated it down into the boom limits of the Mississippi river; that he then made his final proof, commuted his homestead into a cash entry, paid the government for the land, and obtained his final certificate in February, 1896; and that he cut and removed the timber in the winter of 1895 and 1896 in good faith, in the honest belief that he had a lawful right to do so. The defendants averred in their answer that after the commutation, and after the payment for the land by Byerla, they purchased the logs in good faith, and in the honest belief that Byerla had a right to remove and sell the timber; and they further alleged that the logs were not worth more than $1.25 per thousand feet when they bought them. The United States filed a reply to this answer, in which they averred that Byerla's pretended homestead entry and his commutation were fraudulent and void, and that they were afterwards duly canceled for fraud by the Commissioner of the General Land Office of the United States before this action was commenced. There was a verdict and judgment against the defendants for the value of the timber at the time they purchased it, together with interest upon that amount.

At the trial Byerla testified that he entered the land and removed the pine logs in good faith, in the honest belief that he had a right to do so, and that he did so with the intention of faithfully complying with the homestead laws and of acquiring the land for his

¶ 6. See Appeal and Error, vol. 2, Cent. Dig. § 1503.

home; and one of the defendants testified that he believed that the defendants had a right to purchase the logs when they secured them. The evidence disclosed these additional facts: Byerla was an employé of the Northern Pacific Railroad Company at Aitkin, in the state of Minnesota, at a salary of $45 per month. The members of the firm of Potter & Co. lived in that town. Byerla owned a house and lot there of the value of $700, mortgaged for $200, and had some small children, one a baby, and a wife so sickly that he could not take her to this land. The 80 acres which he claimed as his homestead comprised about 30 acres of high arable land covered with a heavy growth of pine, popple, birch, and balsam trees, and about 50 acres of cedar and tamarack swamp which was not susceptible of cultivation. It was about 40 miles from Aitkin. There was no passable road to it in the summer, but in the winter, when the swamps and streams were frozen, there was a road over which teams could be driven to it. In December, 1894, a timber cruiser took Byerla to this land and showed him its boundaries. He remained there seven or eight days, and built a small house or cabin upon the property. In January, 1895, he entered the land as a homestead at the St. Cloud land office, and lived upon it eight or ten days. He was there again in March and in June of that year, when he planted about an acre to potatoes, turnips, and carrots, and built a fence. He was again upon the land after the 4th of July, and in the autumn of 1895 he dug his potatoes, made an agreement with Casey that Potter & Co. should furnish him the necessary supplies to enable him to cut and remove the pine logs from the land during the approaching winter, and that they should have the logs after they were cut and hauled to the river. In the fall of 1895 he built a barn 18 feet long by 16 feet wide, hired six men and the necessary teams, and during the winter of 1895 and 1896 and the spring and summer of the latter year he cut from this land, and floated down into the Mississippi river boom limits, 384,330 feet of pine timber. The cabin and barn which he built upon the land were worth about $200. In February, 1896, he made his final proof of his homestead claim, commuted it to a cash entry, paid the government $100 for the land, and obtained his final certificate. In the following June he was notified by the Commissioner of the General Land Office that his entry was held for cancellation for fraud, and that he was allowed 60 days in which to show why it should be sustained. He removed his outfit from the land, made no attempt, after he had removed the timber, to occupy or cultivate it, and no showing in the land office in support of his entry. Thereupon the entry was canceled. Potter & Co. furnished the necessary supplies to conduct this operation. They paid the men whom Byerla employed, gave him the money with which he made his final proof, and paid for the land, charged him with all these expenditures upon their books, took the logs when they reached the boom limits, and credited him with their value at the price of $6 per thousand feet, which Byerla and Potter & Co. agreed upon in February, 1896, immediately after the final certificate was issued. Byerla did not clear the arable land. He cut and removed the pine timber only from it. He left the popple, birch,

oak, and balsam trees standing. During all this time, indeed from 1882 to 1902, he continued to work for the Northern Pacific Railroad Company at Aitkin, and to draw his salary of $45 per month. But during the time he was absent upon his alleged homestead he employed a substitute, to whom he paid a proper share of his stipend. The logs were worth $1.25 per thousand feet in the trees, and $6 per thousand feet in the boom, at the time when the defendants purchased them.

In this state of the evidence the court charged the jury that if Byerla made his homestead entry in good faith, and if during the time he was cutting and removing the logs he continued to act in good faith, and was cutting the timber from the land in an honest effort to prepare it for cultivation, he had the right to sell the logs, the defendants had the right to buy them, and the plaintiff could not recover; but that if Byerla's original entry was not made in good faith, but was made for the purpose of using his homestead claim as a screen and subterfuge to strip the land of its timber, and if he did cut and remove the timber with this evil intent, then the government was entitled to recover the value of the timber in the boom where the defendants first received it. No exception was taken to this charge, but several errors are assigned upon refusals to submit to the jury specific instructions requested by counsel for the defendants.

It is insisted that the court erred because it refused to charge the jury that if Byerla honestly believed that his conduct in cutting, hauling, and selling the timber to the defendants was rightful, and if the defendants at the time they purchased the logs honestly entertained the same belief, then the defendants could not be liable for more than the value of the timber in the trees. This was undoubtedly a correct statement of the law. But did the refusal to submit it to the jury prejudice the cause of the defendants? The charge actually given by the court gave them the full benefit of the rule which they invoked, and more. It was, in effect, that, if Byerla and the defendants honestly believed that he had the right to cut and remove the timber, the defendants were not liable for anything, but were entitled to a verdict in their favor, because the court charged that unless Byerla made his homestead entry in bad faith, and cut and removed the timber with the intent to use the entry, not to acquire a homestead, but as a screen and subterfuge to strip the land of its value, the government could not recover anything.

If Byerla made his entry in bad faith, with the evil purpose of using it as a subterfuge to strip the land of its timber in violation of the law, and if he actually cut and removed the logs with that intent, and the jury have found that he did, he could not have taken and sold the logs with an honest belief that he had a right to do so. An honest belief that one has the lawful right to take and appropriate an article to himself, and bad faith and the evil intent to steal it, can no more exist at the same time in the same mind than two solid bodies can occupy the same space at the same time. The crucial question in this case, the question which the court fairly submitted to the jury and which the jury has decided, the question whether

Byerla cut and removed the timber with the honest intention to acquire a homestead in this land, or with the evil purpose to strip it of its timber in violation of the law, necessarily involved the issue whether or not he took it with the honest belief that he had the lawful right to do so. The finding of the jury that he took it in bad faith, with the intent to use his homestead entry as a screen to strip the public land of its logs, is necessarily a finding that he did not take it in the honest belief that he had a right to do so; and the refusal to submit that specific question to the jury in the exact words dictated by counsel for the defendants was error without prejudice, and no ground for reversal, because it was necessarily included in the question fairly submitted to the jury, and was necessarily decided by them.

It is specified as error (1) that the court refused to instruct the jury to find a verdict for the defendants, and (2) that it refused to charge them that the plaintiff's damages could not in any event exceed the value of the timber in the trees. The case was not barren of substantial evidence to sustain a finding of the jury that Byerla's homestead entry was conceived, made, and used by him for the sole purpose and with the single intent of availing himself of it to strip the land of its timber and of its value, and with no intention to become a bona fide settler or to use it as his home. The court could not therefore have lawfully taken the case from the jury on the ground that there was no substantial evidence that Byerla made his entry and cut the timber in bad faith. The character of the land, five-eighths of it incapable of cultivation, its inaccessibility, the nature of Byerla's cutting, which made no clearing, but merely stripped the high land of its valuable pine timber and left the popple, birch, and balsam trees standing, the nature of his family, and his immediate abandonment of the land after the pines were removed, point unerringly to the conclusion at which the jury arrived.

This condition of the testimony contained in the record disposes of the second specification now under consideration, because, if Byerla made his entry and took the timber in bad faith, he necessarily took it with the willful intent to convert the property of the government to his own use; and, conceding the innocence of the defendants, the measure of the plaintiff's damages was $6 per thousand feet, or the value of the timber in the boom when the defendants purchased it. The measure of damages for the conversion of property by an innocent purchaser from an intentional trespasser is the value of the property at the time of the purchase. Bolles Woodenware Co. v. U. S., 106 U. S. 432, 435, 1 Sup. Ct. 398, 27 L. Ed. 230; Pine River Logging Co. v. United States, 186 U. S. 279, 293–295, 22 Sup. Ct. 920, 46 L. Ed. 1164.

It is contended, however, that the commutation of Byerla's homestead entry to a cash entry, the sale of the land to him thereunder by the government, the issue of the final certificate, and the acceptance by the United States of the purchase price of the property in February, 1896, estopped the government from maintaining an action against the defendants for the timber taken from the land by Byerla or for its value, and that upon this ground the defendants were entitled to a peremptory instruction in their favor. The position would

be sound if the sale of the land by the United States and its issue of the final certificate had not been induced by fraud, or if, by act or acquiescence, the government had condoned or waived that defect. The acceptance from the purchaser by the United States, or by any other vendee, of the price of the land of which he has been in possession under an offer or contract of sale, estops the vendor from recovering damages of the vendee or of his grantee for timber or ore taken from the land by them during the pendency of the offer or contract. Teller v. United States, 54 C. C. A. 349, 117 Fed. 577; United States v. Ball (C. C.) 31 Fed. 667; United States v. Freyburg (C. C.) 32 Fed. 195.

But fraud vitiates all acts and contracts. The defendants furnished the supplies, and paid the men to cut and haul the timber. They provided the money to pay the United States for the land. They had ample notice to put a reasonable man upon inquiry into the nature of Byerla's homestead entry and of his title to the logs, and a notice sufficient to stir a reasonable man to investigation is notice of all the facts that a reasonably diligent inquiry will disclose. The defendants cannot shelter their title to these logs under the shield of an innocent purchaser. The rule caveat emptor conditions their rights.

Before this action was commenced, Byerla's entry and certificate had been lawfully canceled for fraud by the Commissioner of the General Land Office, and they no longer served as muniments of title either for him or for those who claimed under him with notice of the origin of his title. A final certificate of entry of public lands obtained by and canceled for fraud will not estop the United States from recovering of the grantee therein, who had notice of the fraud, for the conversion of logs or ore wrongfully taken from the land described in the certificate by the grantee before it was canceled.

There was testimony that, when Byerla had cut all but about 70,000 feet of the timber in question, a special agent of the United States informed him that after proving up upon the land he might go on and finish his cutting, and it is specified as error that the court refused to charge, at the request of the defendants, that if the jury believed this testimony there could be no recovery in any event on account of the timber cut after that conversation. But the record contains no evidence of the character or limits of the authority conferred upon this special agent, and it certainly cannot be presumed that he had any authority, by any act or omission on his part, to empower any one to unlawfully appropriate the timber of the United States, or to estop it from enforcing its legal rights. U. S. v. Pine River Logging & Improvement Co., 32 C. C. A. 406, 412, 89 Fed. 907, 913; Pine River Logging Co. v. United States, 186 U. S. 279, 291, 22 Sup. Ct. 920, 46 L. Ed. 1164; Whiteside v. U. S., 93 U. S. 247, 23 L. Ed. 882; Lee v. Munroe, 7 Cranch, 366, 3 L. Ed. 373; The Floyd Acceptances, 7 Wall. 666, 19 L. Ed. 169.

The court permitted a witness to testify, over the objection of the defendants, to the number of feet of timber the latter bought in the winter of 1895–96, and this ruling is assailed as erroneous. But no exception was taken to it, and for this reason it is not presented

for our consideration. It is indispensable to a review in the courts of the United States of any ruling of a trial court on the admissibility of evidence that it should be challenged, not only by an objection, but by an exception taken and recorded at the time, to the end that the attention of the trial judge may be sharply called to the question presented, and that a clear record of his action and its challenge may be made. Hutchins v. King, 1 Wall. 53, 60, 17 L. Ed. 544; Pomeroy's Lessee v. Bank of Indiana, 1 Wall. 592, 602, 17 L. Ed. 638; Newport News & Miss. Valley Co. v. Pace, 158 U. S. 36, 37, 15 Sup. Ct. 743, 39 L. Ed. 887; Tucker v. U. S., 151 U. S. 164, 170, 14 Sup. Ct. 299, 38 L. Ed. 112.

The judgment of the court below is affirmed.