BOARD OF COM'RS OF CITY AND COUNTY OF DENVER v. HOME
SAVINGS BANK.†

(Circuit Court of Appeals, Eighth Circuit. August 24, 1912.)

No. 3,526.

1. PLEADING (§ 426*)—MOTION TO STRIKE—DENIAL—WAIVER.

Denial of defendant's motion to strike the word "negotiable" from
plaintiff's complaint on a city and county certificate of indebtedness
was waived by defendant subsequently filing an answer and amended
answer without excepting to the ruling.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1425–1427;
Dec. Dig. § 426.*]

2. PLEADING (§ 35*)—CERTIFICATE OF INDEBTEDNESS—ACTION—SURPLUSAGE.

Where suit was brought on a city and county certificate of indebted-
ness which was negotiable on its face, an allegation in the complaint
that it was negotiable was surplusage, and it was therefore not error
to deny a motion to strike out the allegation.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 76–80; Dec.
Dig. § 35.*]

3. APPEAL AND ERROR (§ 272*)—RULINGS ON PLEADINGS—EXCEPTION—NECES-
SITY.

Defendant was not entitled to test the correctness of a ruling sus-
taining a demurrer to a separate defense in the answer where it did
not except thereto at the time.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1611–
1619; Dec. Dig. § 272.*]

4. APPEAL AND ERROR (§ 254*)—DEMURRER TO ANSWER—EFFECT.

Where an order sustaining a demurrer to a defense in an answer was
not excepted to, the ruling becomes final, in the absence of a request
and permission to amend.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1486,
1487; Dec. Dig. § 254.*]

5. APPEAL AND ERROR (§ 169*)—REVIEW—QUESTIONS NOT CONSIDERED AT
TRIAL.

Whether a board of commissioners of a city and county had author-
ity to issue a certificate of indebtedness in the form of a negotiable
instrument would not be reviewed on appeal, where it had not been
presented to the trial court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1018–
1034; Dec. Dig. § 169.*]

6. APPEAL AND ERROR (§ 272*)—"EXCEPTION"—OFFICE.

The office of an exception is to challenge the correctness of the rul-
ings or decisions of the trial court promptly when made, to the end
that the rulings may be corrected by the court itself, if deemed erro-
neous, and to lay the foundation for their review, if necessary, by the
proper appellate tribunal. In the federal courts the taking of an ex-
ception immediately on the making of the ruling is indispensable to a
review by the appellate court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1611–
1619; Dec. Dig. § 272.*

For other definitions, see Words and Phrases, vol. 3, pp. 2538–2544;
vol. 8, p. 7656.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
·† Rehearing denied December 6, 1912.

**7. MUNICIPAL CORPORATIONS (§ 905*)—CERTIFICATES OF INDEBTEDNESS—BURDEN OF PROOF.**

Where, in an action on a city and county certificate of indebtedness given for voting machines, defendant pleaded that the certificate was nonnegotiable, and that there was a failure of consideration, the burden was on it to show that the consideration had failed, and, in the absence thereof, plaintiff was entitled to recover.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1891–1893; Dec. Dig. § 905.*]

**8. COURTS (§ 352*)—FEDERAL COURTS—STATE STATUTES.**

A compulsory nonsuit is not allowed in the courts of the United States except where a statute of the state authorizes it; the practice of directing a verdict for the defendant when the evidence is clearly insufficient to support a verdict for plaintiff having taken its place.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 926–932; Dec. Dig. § 352.*]

**9. JUDGMENT (§ 570*)—MERGER AND BAR—DIRECTED VERDICT.**

The difference between a compulsory nonsuit and a directed verdict for the defendant is matter of form rather than substance, except that in the case of the former, a new action may be brought, while in the case of a directed verdict and judgment thereon the action is ended, unless a new trial is granted on motion or on appeal.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1028–1045; Dec. Dig. § 570.*

Discontinuance, nolle prosequi, or dismissal as bar to subsequent prosecution, see note to United States v. A Lot of Precious Stones, 68 C. C. A. 4.]

**10. APPEAL AND ERROR (§ 110*)—FEDERAL COURTS—MOTION FOR NEW TRIAL.**

The denial of a motion for new trial is not sufficient on which to base a writ of error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 740–748; Dec. Dig. § 110.*]

In Error to the Circuit Court of the United States for the District of Colorado.

Action by the Home Savings Bank against the Board of County Commissioners of the City and County of Denver. Judgment for plaintiff, and defendant brings error. Affirmed.

W. H. Ferguson (Milton Smith and Charles R. Brock, on the brief), for plaintiff in error.

Charles W. Waterman, for defendant in error.

Before ADAMS and SMITH, Circuit Judges, and REED, District Judge.

REED, District Judge. The Home Savings Bank, a Michigan banking corporation, which will be called the plaintiff, sued the city and county of Denver, a municipal corporation of Colorado, which will be called the defendant, to recover the amount of a certificate of indebtedness issued by its board of commissioners February 20, 1908, to the order of the Federal Ballot Machine Company, an alleged corporation of California, which will be called the Machine Company, for $11,250, payable in one year, with interest

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

from date at the rate of 5 per cent., payable semiannually. There was a verdict and judgment for the plaintiff, and the defendant brings error.

The complaint alleges that on February 20, 1908, the defendant made and delivered to the Machine Company its negotiable bond or certificate of indebtedness, payable to the order of the Machine Company at the office of the treasurer of the defendant in one year for $11,250, with interest from date, payable semiannually as per coupons attached, which said instrument it is alleged the Machine Company sold, indorsed, and delivered to the plaintiff for value before maturity. The certificate of indebtedness and second coupon are set out in the complaint and are as follows:

$11,250.00                Certificate of Indebtedness.                No. 1.
"City and County of Denver, State of Colorado.

"The Federal Ballot Machine Company having presented its claim, for furnishing ballot machines, against the city and county of Denver, in the sum of eleven thousand two hundred and fifty dollars and the same having been allowed at a regular meeting of the board of county commissioners of the city and county of Denver, state of Colorado, on the seventeenth day of February, 1908, and the board of county commissioners, being authorized thereto by the laws of the state of Colorado, Act of 1905, hereby issues its certificate of indebtedness for the said sum, and will in one (1) year pay to the order of the Federal Ballot Machine Company the sum of eleven thousand two hundred and fifty dollars, with interest on this sum, from the date hereof, at the rate of five per cent. per annum; the said interest payable semiannually, as per two (2) coupons, hereto attached. Interest and principal payable at the office of the county treasurer of the city and county of Denver, Colorado. This certificate is one of a series of ten issued in like sum, payable annually.

"Signed by the board of county commissioners of the city and county of Denver, of the state of Colorado, by its chairman, and attested by the county clerk and recorder with the seal of the county, authorized thereto by resolution of the 20th day of February, 1908.

"Denver, Colorado, February 20th, 1908."

The instrument is indorsed as follows:

"Pay to the order of The Home Savings Bank, Detroit, Mich. Federal Ballot Mach. Co., A. Andrew, Vice Prest."

Coupon No. 2 attached to the instrument is as follows:

"On the 20th day of February, 1909, the board of county commissioners of the city and county of Denver, state of Colorado, will pay to the order of the Federal Ballot Machine Company, at the office of the county treasurer of the city and county of Denver, Colorado, two hundred eighty-one and one quarter dollars, being six months interest to that date on certificate of indebtedness No. 1 for $11,250.00.

"Board of County Commissioners of the City and County of Denver,
Colorado,                                By S. D. C. Hays, Chairman.
"Attest: Albion K. Vickery,
        "County Clerk and Recorder of the City and County. of Denver,
        Colorado."

Indorsed:
                        "Federal Ballot Mach., A. Andrew, Vice Prest."

It is alleged that on the 23d day of February, 1909, both instruments were presented to the treasurer of the defendant and pay-

ment demanded, which was refused, that plaintiff thereupon caused them to be protested for nonpayment, and paid $7.50 protest fees therefor. Judgment is asked against the defendant for the amount of said instruments with interest, and for the protest fees.

To this complaint the defendant filed a motion to strike therefrom the word "negotiable," where it appears therein, also the allegation that the instruments were protested, and plaintiff paid $7.-50 as fees therefor, upon the ground that the word "negotiable" is but an expression of an erroneous legal conclusion as to the character of the certificate of indebtedness, that it affirmatively appears that the instruments sued upon are not negotiable, that neither could be legally protested, and the allegations of the complaint as to the payment of protest fees are wholly irrelevant and immaterial. This motion was denied, but no exception was taken to the ruling, and the defendant was given 20 days thereafter in which to answer. Within such 20 days the defendant answered, and later, on January 5, 1910, filed an amended answer alleging three defenses to the complaint as follows:

First defense: That it has not sufficient knowledge or information upon which to base a belief as to whether or not the Machine Company negotiated, transferred, indorsed, or delivered to the plaintiff for value or otherwise, the instruments sued upon, or as to whether the plaintiff is the owner of said instruments.

Second defense: That the consideration for the execution of both the certificate of indebtedness and interest coupon mentioned in the complaint has wholly failed, in that said certificate of indebtedness was executed in part payment for 150 voting machines known as the "Dean Ballot Machines," under an agreement made and entered into between the Federal Ballot Machine Company and this defendant on the 27th day of May, 1907, whereby the Machine Company agreed and guaranteed that each of said machines should conform in every particular to the Constitution and statutes of the state of Colorado with respect to the holding of elections by means of said machines, and that they would perfectly and accurately perform the work of voting machines as required by said laws; that said machines do not conform to the Constitution and statutes of Colorado, and do not accurately perform the work required by said Constitution and laws; that in the use of said machines the secrecy of the ballot cannot be preserved; that the mechanism of the machines is so intricate and complicated that it is impossible for an elector by the use of said machines to vote a straight ticket, a mixed ticket, or an irregular ticket or any of them, and it is impossible for an elector by the use of said machines secretly to vote a split or irregular ticket; that their construction is such that an elector cannot cast a vote for presidential electors without first divulging the names of the persons for whom he desires to vote, and it is impossible for an elector to vote for any particular elector; and that said machines are without any value whatever.

Upon information and belief it is alleged that the Machine Company is and was at the institution of the action the beneficial owner

of the certificate of indebtedness and interest coupon set forth in the complaint; that neither thereof was before maturity, or at any time, in good faith and in due course of business negotiated, sold or transferred by the Machine Company or by any one to the plaintiff; that any transfer or delivery thereof, if any was ever at any time made, was for the sole purpose of enabling the plaintiff in its own name to prosecute this action for the purpose of thereby defeating the defense which the Machine Company knew existed against itself, and of which the plaintiff had notice prior to any alleged negotiation, transfer, or delivery thereof to it.

The third defense is the same as the second, except that it omits the second part or paragraph of the second defense beginning with the words, "Upon information and belief" that the Machine Company is and was the owner of the instrument sued upon, etc.

The plaintiff demurred to each of these defenses upon the ground that none of them states any facts sufficient to constitute a defense to either the certificate of indebtedness or coupon set forth in the complaint. The demurrer was overruled as to the first and second defenses, and sustained as to the third, January 27, 1910. No exception was taken by the defendant to the ruling. The plaintiff thereupon replied to the first and second defenses denying all of the allegations thereof; and upon the trial, which began August 2, 1910, offered and introduced testimony that it purchased the instruments sued upon in good faith, before maturity and for value, without notice of any defense thereto. The defendant offered no evidence, but at the close of the plaintiff's evidence moved for "a nonsuit upon questions of law raised by defendant in the motion to strike parts of the complaint," which motion was denied. The defendant then moved for a directed verdict in its favor, but stated no ground therefor, which motion was also denied, and to these rulings the defendant at the time excepted.

The plaintiff then moved for a directed verdict in its favor for the amount due upon the certificate of indebtedness and coupon sued upon, which motion was sustained and judgment rendered for the plaintiff against the defendant for the amount of said instruments and costs, to which ruling and judgment the defendant excepted. A motion for new trial was afterwards made and denied, and the defendant excepted.

The defendant assigns as error that the Circuit Court erred (1) in overruling its motion to strike from the complaint the word "negotiable" and the allegations of the protest of the instruments sued upon; (2) in sustaining the demurrer to the third defense alleged in its answer; (3) in ruling that the instruments sued upon were negotiable; (4) the denial of its motions for nonsuit and for a directed verdict in its favor; and (5) in rendering judgment for the plaintiff.

In argument the defendant contends: (1) That neither section 8 of article 7 of the Constitution of Colorado, nor the act of 1905, authorized the board of county commissioners of the city and county of Denver to issue negotiable certificates of indebtedness, and that

the certificate and coupon sued upon were negotiable in form, and therefore void. (2) That, even if the constitutional provision and statute in question should be held to authorize the issuance of negotiable bonds, the securities sued on in this action are not bonds, were never intended to be negotiable, and are not negotiable; and the plaintiff took them subject to any equities existing between the county and the payee.

Section 8, art. 7, of the Constitution of Colorado, was amended November 6. 1906, to read in this way, as set forth in the brief of counsel for defendant:

"All elections by the people shall be by ballot, and in case paper ballots are required to be used, every ballot shall be numbered in the order in which it shall be received, and the number recorded by the election officers on the list of voters opposite the name of the voter who presents the ballot. The election officers shall be sworn or affirmed not to inquire or disclose how any elector shall have voted. In all cases of contested elections, in which paper ballots are required to be used, the ballots cast may be counted and compared with the list of voters, and examined under such safeguards and regulations as may be provided by law. Nothing in this section, however, shall be construed to prevent the use of any machine or mechanical contrivance for the purpose of receiving and registering the votes cast at any election, provided that secrecy in voting be preserved.

"When the governing body of any county, city, city and county or town, including the city and county of Denver, and any city, city and county or town which may be governed by the provisions of special charter, shall adopt and purchase a voting machine or voting machines, such governing body may provide for the payment therefor by the issuance of interest-bearing bonds, certificates of indebtedness or other obligations, which shall be a charge upon such city. city and county or town; such bonds, certificates or other obligations may be made payable at such time or times, not exceeding ten years from the date of issue, as may be determined, but shall not be issued or sold at less than par."

April 10, 1905, the Legislature of Colorado passed an act (section 2342, Rev. Stat. Col. 1908) identical with section 8, art. 7, of the Constitution as amended, authorizing the use of voting machines at elections, to be effective on and after December 13, 1906, in the event only that the amendment of section 8, art. 7, of the Constitution should be adopted by the people at the general election in 1906, which amendment was so adopted.

[1] We are of opinion that the record does not present the question urged by the defendant as above stated for our determination. The record shows that the defendant first moved the Circuit Court to strike from the complaint the word "negotiable" where it appears therein, and the averment of the protest of the instruments and the payment of the protest fees, upon the ground that the former was but a statement of an erroneous legal conclusion, and the latter because it affirmatively appeared that the instruments sued upon are not negotiable and could not legally be protested, and were, therefore, wholly irrelevant and immaterial. The motion was denied and defendant given 20 days in which to answer, but it saved no exception to the ruling. Within the 20 days defendant filed an answer to the complaint and later an amended answer. The answers were waivers of the alleged errors, if any, in the ruling upon the motion, even if the ruling had been excepted to. Travelers' Ins. Co. v. Redfield, 6 Colo.

App. 196, 40 Pac. 195–197; Cerussite Mining Co. v. Anderson, 19 Colo. App. 307, 75 Pac. 158–159; Enright v. Midland Sampling & Ore Co., 33 Colo. 341, 80 Pac. 1041.

[2] The word "negotiable" might well have been eliminated, or omitted originally, from the complaint without affecting in any way its legal sufficiency, for the instrument to which it referred was set forth in full in the complaint. Its nature and character thus appeared upon its face, and the allegation that it was "negotiable" could not and did not change its legal effect. The word was therefore mere surplusage, and did not affect the issues. The motion to strike the averment of the protest and payment of the fees is made to rest upon the ground that "it affirmatively appears" that the instruments were not "negotiable," and could not, therefore, be legally protested. But the instruments upon their face are negotiable. There was no prejudicial error, therefore, in denying the motion, even if the proper exception had been saved to the order overruling it.

[3] The authority of defendant's board of commissioners under the law of Colorado, to issue negotiable certificates of indebtedness, or the validity in its inception of the instrument sued upon, was challenged in the Circuit Court, if at all, only by the demurrer to the third defense of the answer. The demurrer to that defense was sustained, upon what ground does not appear, but no exception was saved to the ruling. Admitting without deciding that the third defense raised the issue of the want of authority of the board of commissioners to issue the certificate as a negotiable instrument, or the legality of the instrument in its inception, the defendant, if it desired to test the correctness of the ruling sustaining the demurrer, should have excepted thereto at the time. This it did not do.

The Civil Code of Colorado provides:

"Sec. 74. When a demurrer is decided, either in term time or vacation, the court or judge shall immediately cause the decision thereof to be entered in the record, and may proceed to final judgment thereon in favor of the successful party, unless the unsuccessful party shall plead over or amend upon such terms as may be just, and the court or judge may fix the time for pleading over and filing amended pleadings; and if the same be not filed within the time so fixed, judgment by default may be entered as in other cases."

The purpose of this section is to prescribe the duty of the court or judge when a demurrer is decided. Anthony v. Slayden, 27 Colo. 144, 60 Pac. 826.

[4] If it be said that judgment was not entered until after the trial, and was then excepted to, the sufficient answer is that the insufficiency of the third defense was determined by the ruling upon the demurrer thereto several months before, which was final in the Circuit Court, unless the defendant was allowed to amend, which it did not request nor the court allow, and no exception was then taken to the ruling.

[5] There is nothing, however, in any of the defenses that challenges the authority of the board of commissioners to issue the certificate of indebtedness as a negotiable instrument nor the legality or validity of the instrument in its inception, and it does not affirma-

tively appear from the record that either of these questions was ever presented to or determined by the Circuit Court. This court will not, therefore, consider or determine them. Lesser Cotton Co. v. St. Louis, I. M. & S. Ry. Co., 114 Fed. 133–140, 52 C. C. A. 95; Hatcher v. Northwestern Nat. Ins. Co., 184 Fed. 23–25, 106 C. C. A. 225.

[6] The office of an exception, in practice, is to challenge the correctness of the rulings or decisions of the trial court promptly when made, to the end that errors in such rulings may be corrected by the court itself, if, upon its attention being called thereto, it deems them to be erroneous; and to lay the foundation for their review, if necessary, by the proper appellate tribunal. In the courts of the United States such an exception, taken immediately upon the ruling being made, is indispensable to a review by the proper appellate court of the ruling. Railway Co. v. Heck, 102 U. S. 120, 26 L. Ed. 58; Newport News, etc., Ry. Co. v. Pace, 158 U. S. 36, 15 Sup. Ct. 743, 39 L. Ed. 887; Potter v. United States, 122 Fed. 49, 55, 58 C. C. A. 231.

[7] In its second defense the defendant alleged the failure of the consideration for the certificate of indebtedness, or a breach of the guarantee of the Machine Company of the voting machines, as in its third defense, and that plaintiff was not in good faith the owner of the instruments sued upon, but was prosecuting the action for the benefit of the Machine Company with knowledge of the defense thereto as against that company. This, if true, would be a good defense to the action, even if the defendant's board of commissioners were authorized to issue the certificate of indebtedness as a negotiable instrument. It was, therefore, open to the defendant to prove upon the trial, if it could do so, its second defense, but it made no attempt or offer to do so and moved for a nonsuit upon questions of law raised by "its motion previously made to strike parts of the complaint." But this motion did not challenge the legal sufficiency of the complaint to support a judgment for the plaintiff; for if the instrument had in fact been nonnegotiable, as defendant contends that it was, the plaintiff would have been entitled to recover thereon in the absence of proof by the defendant of the failure of consideration.

[8] A compulsory nonsuit, however, is not allowed in the courts of the United States, except where a statute of the state authorizes it (Central Transportation Co. v. Pullman's Car Co., 139 U. S. 24–39, 11 Sup. Ct. 478, 35 L. Ed. 55; Coughran v. Bigelow, 164 U. S. 301–307, 17 Sup. Ct. 117, 41 L. Ed. 442); the practice of directing a verdict for the defendant when the evidence is clearly insufficient to support a verdict for the plaintiff having taken its place.

[9] In fact, the difference between a compulsory nonsuit and a directed verdict for the defendant is matter of form rather than of substance, except that in case of the former a new action may be brought, while in the case of a directed verdict and judgment thereon the action is ended unless a new trial is granted upon motion or on appeal. Oscanyan v. Arms Co., 103 U. S. 261–264, 26 L. Ed. 539; Hammergen v. Schurmeier (C. C.) 3 Fed. 77, 1 McCrary, 436 (Mr. Justice Miller). We are not referred to any statute of Colorado authorizing a compulsory nonsuit; but, if there be such, the plaintiff gave evidence in support of its cause of action which, in the absence

of proof by the defendant sustaining its second defense, or even if the instrument was not negotiable, would entitle the plaintiff to recover. There is nothing, therefore, upon which to base defendant's motion for nonsuit; and a directed verdict in its favor upon the evidence, clearly, would have been error. Both motions were therefore properly denied.

[10] The denial of the motion for new trial is not, of course, sufficient upon which to base a writ of error. Railway Co. v. Heck, 102 U. S. 120, 26 L. Ed. 58.

The judgment of the Circuit Court is therefore affirmed.