## REEDER v. MORTON-GREGSON CO.

## PYLE v. SAME.

(Circuit Court of Appeals; Eighth Circuit. February 29, 1924.)

Nos. 6094, 6095.

**1. Contempt ⊜⇒4—"Civil contempt" defined.**

"Civil contempt" is the refusal to do an act commanded, and is remedied by imprisonment or like coercion until the party performs the act.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Civil Contempt.]

**2. Contempt ⊜⇒3—"Criminal contempt" defined.**

"Criminal contempt" is the doing of an act forbidden. It is a past act, and imprisonment therefor is punitive, not coercive, inflicted solely as punishment for the completed act of disobedience.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Criminal Contempt.]

**3. Contempt ⊜⇒40—Proceeding for violating restraining order prohibiting picketing held one for criminal contempt.**

A proceeding under Comp. St. § 1245b, to punish parties violating a restraining order prohibiting picketing except in a stated manner, *held* a proceeding for criminal contempt.

**4. Contempt ⊜⇒66(3)—No review of questions not presented to trial court.**

Where the trial judge has acquired plenary jurisdiction of the subject-matter and the parties to a contempt proceeding, questions of law and procedure, which were not presented to nor decided by him, are not open to review.

**5. Contempt ⊜⇒66(3, 6)—Objection, exception, and bill of exceptions essential to review of rulings at trial.**

Generally it is indispensable to a review of a ruling of a federal District Court on procedure or evidence that it should be challenged, not only by an objection, but by an exception taken and recorded at the time, and that the objection, ruling, and exception be embodied in a bill of exceptions signed by the trial judge; and this rule is especially applicable to late complaints and objections to procedure, and to the method in which the court exercises jurisdiction to try the merits of the case.

**6. Contempt ⊜⇒57, 66(3)—When objections to procedure waived.**

Complaints of and objections to procedure and to the method in which the court exercises jurisdiction to try the merits of the case may be waived by appearance, by failure to object at the proper time, and by trial on the merits without making them.

**7. Contempt ⊜⇒66(6½)—No review of objections not raised by assignments of error filed in accordance with court rule.**

Objections to and complaints of the method of the trial of a contempt case, not raised by assignments of error filed in accordance with Circuit Court of Appeals rule 11, *held* not reviewable.

**8. Contempt ⊜⇒66(7)—Technical errors not affecting substantial rights disregarded.**

Where the evidence sustains the charges of contempt against defendants, under Judicial Code, § 269, as amended by Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246), technical errors, defects, or exceptions, which do not affect the substantial rights of the parties, may be disregarded.

In Error to the District Court of the United States for the District of Nebraska.

---

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

296 F.—50

Jay Reeder and Arthur Pyle were sentenced to 60 days' imprisonment for violating a restraining order in a suit brought by the Morton-Gregson Company, and each brings a separate writ of error. Affirmed.

Frank C. Smith, of St..Louis, Mo. (Andrew P. Moran, of Nebraska City, Neb., on the brief), for plaintiffs in error.

W. F. Moran, of Nebraska City, Neb. (W. R. Brown, of Chicago, Ill., on the brief), for defendant in error.

Before SANBORN and KENYON, Circuit Judges.

SANBORN, Circuit Judge. In December, 1921, Morton-Gregson Company, a corporation engaged in Otoe county, Neb., where it owned and operated a large plant, in pork packing and provision dealing, brought suit in equity in the court below against Local Union No. 122 of Amalgamated Meat Cutters' and Butchers' Workmen of North. America, Jay Reeder, Arthur Pyle, and other individuals, defendants, and on December 16, 1921, the court issued its restraining order in that suit, by which Reeder and Pyle, and many other defendants, were ordered to refrain from interfering with the pork-packing plant, business, or employees of the plaintiff, "and from picketing or maintaining at or near the streets leading to the premises of the Morton-Gregson Company of any pickets more than one for each point of ingress and egress to the plant or place of business, and that all others than such single pickets are enjoined from congregating or loitering at the plant or in the neighboring streets by which access is had to the plant."

On January 2, 1922, the affidavit of C. M. Aldrich, verified December 31, 1921, was presented to the District Judge below to the effect that Reeder and Pyle, and others in concert with them, on the morning of December 31, 1921, at the north end of Cemetery Bridge, on the road leading directly to plaintiff's plant and on the main passageway from Nebraska City to the principal point of ingress to and egress from the plaintiff's plant were congregated together and were picketing at that point for the purpose of intimidating, harassing, and annoying plaintiff's employees going to and from the plant, and were maintaining more than one picket at that point of ingress to and egress from the plant, and were there congregating and loitering, in violation of the restraining order of the court. Upon the presentation of this affidavit to the judge he issued his order on Reeder and Pyle, as he was expressly authorized to do by section 1245b of the Compiled Statutes, to show cause before him on January 7, 1922, if any they had, why they should not be punished for contempt. The order and affidavit were served upon them on January 5, 1922. On January 7, 1922, they appeared in person and by counsel, pleaded, produced a large volume of evidence, and each testified in his own behalf; the court found them guilty of the charge in the affidavit and sentenced each of them to jail for 60 days. Each of them sued out a writ of error on an assignment of the same 19 alleged errors. Each of them has presented a brief and specified the same 4 alleged errors; but in their brief they neither argue nor mention any of these assigned or specified errors. They abandon all of them, and write that there is but one question involved in this case in this court, and that that question is: Had the District

Judge the right to commit the defendants to the county jail. They further write in their brief that they do not question the judge's right if this is a criminal case, but that it is in the nature of a civil contempt.

[1, 2] But a civil contempt is a refusal to do an act commanded, and is remedied by imprisonment or like coercion until the party performs the act. A criminal contempt is the doing of an act forbidden. It is a past act. It is a thing done, and imprisonment therefor is punitive, not coercive, inflicted solely as punishment for the completed act of disobedience. Gompers v. Buck's Stove & Range Co., 221 U. S. 418, 442, 443, 31 Sup. Ct. 492, 498 (55 L. Ed. 797, 34 L. R. A. [N. S.] 874), where the Supreme Court said:

"But imprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was mandatory in its character. Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order. ＊ ＊ ＊ If imprisoned, as aptly said in Re Nevitt, 117 Fed. 451, 'he carries the keys of his prison in his own pocket.' He can end the sentence and discharge himself at any moment by doing what he had previously refused to do. On the other hand, if the defendant does that which he has been commanded not to do, the disobedience is a thing accomplished. Imprisonment cannot undo or remedy what has been done, nor afford any compensation for the pecuniary injury caused by the disobedience. If the sentence is limited to imprisonment for a definite period, the defendant is furnished no key, and he cannot shorten the term by promising not to repeat the offense. Such imprisonment operates, not as a remedy coercive in its nature, but solely as punishment for the completed act of disobedience. ＊ ＊ ＊ The distinction between refusing to do an act commanded, remedied by imprisonment until the party performs the required act, and doing an act forbidden, punished by imprisonment for a definite term, is sound in principle, and generally, if not universally, affords a test by which to determine the character of the punishment."

[3] The affidavit of Aldrich, which, under section 1245b, Compiled Statutes, was a substitute for and of like effect with an information by the district attorney (Jennings v. United States [C. C. A.] 264 Fed. 399, 405), charged a past act of disobedience on December 31, 1921, of the restraining order of December 16, 1921, an offense which could not be remedied by any coercive imprisonment, and which, therefore, could not be a civil contempt, and which invoked none other than punitive imprisonment, which unavoidably made the proceeding to impose it a proceeding for a criminal contempt. The District Judge who tried these cases so understood them. To an application to amend at the opening of the trial he denied such amendment, and declared that it was not permissible in a criminal case. The result was that, when the affidavit and order to show cause had been served upon Reeder and Pyle, and they had appeared before the judge personally and by counsel on the return day, the judge below had plenary jurisdiction of the proceeding against them for criminal contempts. He tried these cases and sentenced the defendants in January, 1922. They complained for the first time, when their counsel filed their brief in this court on October 31, 1923, that at their trial the court did not require the contempt proceeding to be entitled United States against them, that it did not call the district attorney to prosecute in place of the attorneys for Morton-

Gregson Company, that it did not cause the affidavit to be amended, by adding a prayer for the order to show cause, and that it did not make some other such changes in the proceeding. There are, however, numerous and conclusive reasons why these complaints and objections can neither be sustained nor considered in this court at this late day under the record which is here presented.

[4] In cases such as these this is a court exclusively for the correction of errors of law of the trial judge or court. Where, as in these cases, such a judge or court has acquired plenary jurisdiction of the subject-matter and of the parties, questions of law and procedure which were not presented to nor decided by the judge are not open to review, because he cannot be guilty of any error in a ruling he never made, upon an issue to which his attention was never called. The complaints and objections counsel for the defendants now make in their brief here for the first time were never presented to the trial court, nor was its attention ever called to them. The defendants and their counsel presented other objections, which they have now waived, presented their evidence, and participated in the trial of these cases upon their merits, without any suggestion of the alleged errors of procedure of which they now complain.

[5] The general rule is that it is indispensable to a review in the courts of the United States of any ruling of a trial court upon procedure or evidence that it should be challenged, not only by an objection, but by an exception taken and recorded at the time, and that the objection, ruling, and exception be embodied in a bill of exceptions signed by the trial judge. The record in these cases contains a bill of exceptions, and that bill of exceptions discloses the fact that no objections to the procedure of which counsel now complain, no ruling thereon or exception thereto, were ever made or taken. For that reason the complaints and objections now made are not cognizable in this appellate court. United States v. Breitling, 20 How. 252, 254, 15 L. Ed. 900; Tucker v. United States, 151 U. S. 164, 170, 14 Sup. Ct. 299, 38 L. Ed. 112; St. Clair v. United States, 154 U. S. 134, 153, 14 Sup. Ct. 1002, 38 L. Ed. 936; Humes v. United States, 170 U. S. 210, 212, 18 Sup. Ct. 602, 42 L. Ed. 1011; Lesser Cotton Co. v. St. Louis, Iron Mountain & Southern Ry. Co., 114 Fed. 133, 140, 52 C. C. A. 95, and cases there cited; Potter et al. v. United States, 122 Fed. 49, 55, 58 C. C. A. 231.

[6] This rule is especially applicable to late complaints of and objections to procedure, and to the method in which the court exercises jurisdiction to try the merits of the case. All such objections may be waived by appearance, by failure to object at the proper time, and by trial upon the merits without making them. Rogers v. Penobscot Mining Co., 154 Fed. 606, 609, 83 C. C. A. 380; Southern Pacific Co. v. Arnett, 126 Fed. 75, 81, 61 C. C. A. 131.

[7] Again, rule 11 of this court requires that an assignment of errors, which sets out each error asserted or intended to be urged, shall be filed by the plaintiff in error, with the clerk of the court below with his petition for the writ of error, that no writ of error shall be allowed until such assignment of errors shall have been filed, and that errors

not assigned according to this rule will be disregarded; but the court, at its option, may notice a plain error not assigned. On January 22, 1922, when they sued out their writs of error, Reeder and Pyle assigned 19 alleged errors; but they did not assign any of the alleged errors or complaints which they present for the first time in their brief filed in this court on October 31, 1923, and which alone they now urge. From the year 1901, Frame v. Portland Gold Mining Co., 108 Fed. 750, 47 C. C. A. 664, to this day, we have declared that this rule 11 was just and reasonable, that it was our purpose to adhere to it strictly, that it would be enforced, and that we could not consider or decide issues of law which were not raised by assignments of error filed before or when the writ of error was allowed. Simpson v. First National Bank, 129 Fed. 257, 261, 63 C. C. A. 371, and cases there cited. The objections to and complaints of the method of the trial of the cases now urged were not raised by assignments of error filed in accordance with this rule, and they are not cognizable or reviewable by this court now.

[8] Finally, section 269 of the Judicial Code, as amended by chapter 48, 40 Stat. 1181 (Comp. St. Ann. Supp. 1919, § 1246), provides that:

"On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

The substantial rights of the parties in these cases are conditioned by the evidence upon the issue whether or not Reeder and Pyle were guilty of the charge of violating on December 31, 1921, the restraining order of December 16, 1921. The District Judge who tried the cases found that the evidence sustained the charge. Out of an abundance of caution we have carefully read and considered all this evidence, and are of the same opinion, and our conclusion is that, disregarding technical errors, defects, or exceptions, which do not affect the substantial rights of the parties, the judgments in these cases should be and they are affirmed, and the motion of Reeder and Pyle to tax the costs of the transcript against Morton-Gregson Company is denied.