68 U.S. 53 (1863)
1 Wall. 53
HUTCHINS ET AL.
v.
KING.
Supreme Court of United States.

*55 Messrs. Hutchins and Carpenter for the plaintiff in error.
Mr. Wells for the defendant in error.
*56 Mr. Justice FIELD delivered the opinion of the court:
The stipulations in the mortgage to Goodall provided, as we construe them, that the mortgagors should have the right to enter upon the mortgaged premises and cut timber, at first to the value of ten hundred dollars, and subsequently as they made the several payments designated, to the value of the sums paid; but that in case they failed to make any one of the payments designated, they were to cease cutting and to surrender possession until the amount due was paid. The timber, for the conversion of which the present action is brought, was cut after the interest on some of the notes secured had become due, and whilst it remained unpaid, and the greater portion of it was cut after the principal of one of the notes had matured and was also unpaid.
In June, 1856, after the note which had matured was paid *57 but whilst a suit for the interest on the other notes was pending, the mortgagors sold the timber cut to King, the plaintiff below, the defendant in error in this court. The defendants below, Hutchins and Woods, who had succeeded by assignment of the notes and delivery of the mortgage, to the rights of the mortgagee, in September, 1856, took possession of the timber cut, and subsequently disposed of it, and appropriated the proceeds. In November following, the interest due on the unpaid notes was collected. It does not appear from the record at what precise period the defendants disposed of the timber, but we assume from the argument of counsel that this was done after their collection of the interest. In 1859, the present action was brought to recover the value of the timber alleged to have been thus converted.
The defence rested mainly upon a claim of ownership in the property by the defendants. The position taken by their counsel in the court below, and urged in this court, was substantially this: that between the parties to the mortgage, the mortgagee was the owner of the land, and as such was clothed with all the rights and privileges of ownership; that the license to cut timber contained in the stipulations of the mortgage ceased upon the first failure to meet one of the payments designated; and that after default the defendants succeeding to the interests of the mortgagee had the absolute right to all the timber cut from the land, without liability to account to any one. We do not state the position of the defendants in the precise language of their counsel, but we state it substantially.
A mortgage is in form a conveyance, vesting in the mortgagee upon its execution a conditional estate, which becomes absolute upon breach of the condition. At law it was originally held to carry with it all the rights and incidents of ownership. The right of the mortgagee to be treated as owner of the mortgaged premises could only be defeated upon the performance of the conditions annexed by the day designated. Subsequent performance only gave a right to the mortgagor to resort to a court of equity for relief from the forfeiture arising upon breach of the conditions. Such is *58 the law at this day in some of the States of the Union. But in a majority of the States the law in this respect has been greatly modified by considerations drawn from the object and intention of the parties in executing and receiving instruments of this character. The doctrine established by courts of equity, looking through the form to the real character of the transaction, that a mortgage is a mere security for a debt, and creates only a lien or incumbrance, and that the equity of redemption is the real and beneficial estate in the land, and may be sold and conveyed in any of the ordinary modes of transfer, subject only to the lien of the mortgage, has to a great extent, "by a gradual and almost insensible progress," as Kent observes, been adopted by the courts of law.[*] To such a degree has this equitable view prevailed that the interest of the mortgagee is now generally treated by the courts of law as real estate, only so far as it may be necessary for the protection of the mortgagee and to give him the full benefit of his security. Although, in the absence of stipulations as to the possession, he may enter upon the premises, his interest is widely different from that of owner. He cannot by conveyance transfer any interest in the premises without a transfer of the debt secured;[] his interest is not subject to attachment or seizure on execution;[] he cannot remove the buildings on the premises, nor the fixtures attached; nor can he subject the premises to any uses but such as may furnish the means for the payment of the debt secured without impairing the value of the estate.
In few States is the equitable doctrine respecting mortgages more clearly asserted than in New Hampshire, where the mortgage was executed upon which the rights of the parties to the present action arise. Thus, in Southerin v. Mendum,[§] the Supreme Court of that State, in considering the nature of the interest which a mortgagee possesses, said: "In order to give him the full benefit of the security, and appropriate remedies for any violation of his rights, he is treated as the owner *59 of the land. But for other purposes the law looks beyond the mere form of the conveyance to the real nature of his interest, and treats his estate in the land as a thing widely different from an estate in fee simple." In that case it was held that the interest of the mortgagee in the land was a mere chattel, and passed by a simple delivery of the note secured as an incident of the debt. And in Ellison v. Daniels,[*] the same court said: "The right of the mortgagee to have his interest treated as real estate extends to and ceases at the point where it ceases to be necessary to enable him to avail himself of his just rights, intended to be secured to him by the mortgage." In that case the demandant in a writ of entry was mortgagor, and the tenant claimed under the mortgagee through various mesne conveyances executed after the law day, and it was held that nothing passed to the tenant, the court observing that to enable the mortgagee to sell and convey his estate was not one of the purposes for which his interest is to be thus treated; that there was no necessity that it should be so treated, as the sale could be equally well effected by the transfer of the note secured by the mortgage.
With these views of the nature of the interest of the mortgagee, under the law of New Hampshire, the question presented in the case at bar becomes one of easy solution. The timber growing upon the land mortgaged constituted a portion of the realty. It was embraced in the pledge of the land as security. As the assignees of the mortgage held the land, so they held the timber upon it both before and after it was cut, as a portion of their security. They could not sell it, any more than they could pass, by their conveyance, the fee of the land.
The mortgagors had, it is true, no right to cut the timber after default made in any of the payments designated in the mortgage. They could do nothing to diminish the value of the estate. The right to cut the timber rested upon the license contained in the stipulations of the mortgage. Their cutting, except in pursuance of such license, might have been *60 restrained, upon proper application, by a court of equity.[*] The sale by them, after it was cut, did not divest the lien of the assignees of the mortgage; the purchaser took the timber subject to their paramount rights. The assignees could follow it and take possession of it, and hold it until the designated amounts due at the time were paid. When these were paid, their rights over it ceased, and the vendee of the mortgagors became invested with a complete title. The subsequent detention of the timber by the assignees was wrongful, and the sale of it a conversion, for which they were liable to the purchaser.
Some other positions were pressed by the plaintiffs in error upon the attention of the court on the argument, but we do not notice them; because what is termed in the transcript "a bill of exceptions," does not show that any exception was taken to the rulings of the court. The bill simply shows that certain positions were urged by the parties, and that certain rulings were made. We have, however, considered the material question argued, because no objection was taken to the record on the argument, and because the associate justice of this court, who presided at the circuit where the cause was tried, informs us that an exception was in truth taken, and that the omission of the bill to state the fact is a mere clerical error. We do not intend, however, to allow this case to be drawn into a precedent. To authorize any objection to the admission or exclusion of evidence, or to the giving or refusal of any instructions to the jury, to be heard in this court, the record must disclose not merely the fact that the objection was taken in the court below, but that the parties excepted at the time to the action of the court thereon.
JUDGMENT AFFIRMED.
NOTES
[*] 4 Kent, 160.
[] Jackson v. Bronson, 19 Johnson, 325.
[] Jackson v. Willard, 4 Id., 41.
[§] 5 New Hampshire, 429.
[*] 11 New Hampshire, 274.
[*] Brady v. Waldron, 2 Johnson's Ch., 148.