MICHAEL KNOX *vs.* M. J. & J. H. HARALSON.

April Term, 1875.

SALE OF WOOD IN THE TREE MUST BE IN WRITING, AND CERTAIN AS TO THE LAND.—A sale of so many cords of wood now standing in the tree is within the statute of frauds, and must be in writing, and the writing must so describe the land that it can be identified without extrinsic proof.

*Jno. A. Campbell*, for complainant.
*J. B. White* and *M. Vaughn*, for defendants.

THE CHANCELLOR :—The complainant came to Nashville, in 1872, a stranger, with some $2,000 in money. In October of that year the defendant M. J. Haralson, learning, as he says, that the complainant had some money, and was anxious to engage in business in Nashville, informed him that he, Haralson, was the owner of a lumber-yard in Nashville, which was then controlled and occupied by his son, the defendant J. H. Haralson, and that if he, Knox, would furnish the money to buy stock for the yard, he might form a partnership with said J. H., have one-half the profits, and should he become dissatisfied, at the end of three or four months, with the partnership, he should have his money paid back to him, with interest at the rate of 10 per cent. per annum, and also be paid fair compensation for the labor performed by him. The complainant did advance $1,000, and enter into the arrangement proposed. Shortly afterwards, on the 10th of November, 1872, the defendant M. J. Haralson borrowed from the complainant another $1,000, for which he gave him his note at one day, with 10 per cent. interest, payable on ten days' notice. The partnership between complainant and J. H. Haralson seems to

have been terminated in March or April, 1873, complainant remaining in possession of the yard, and continuing the lumber business. On the 25th of July, 1873, there was a settlement between complainant and M. J. Haralson of the first advance of $1,000 to buy stock, which was satisfactory to the parties, Haralson giving his note at one day, with 10 per cent. interest, for the balance of $350 found due to complainant. On this note a credit was given, on the 7th of October, 1873, for a horse, and, on the next day, an additional credit of $60 for lumber. On the 29th of September, 1873, defendant M. J. Haralson obtained from complainant an instrument in writing, certifying that he had contracted with said Haralson for 500 cords of slabs and stocks, at $4 per cord, half in cash on delivery and half to be credited on Haralson's indebtedness, the lumber to be delivered in the complainant's yard " within the next twelve months." There seems to have been no obligation on Haralson's part to deliver the lumber, and M. J. Haralson, in his deposition, says he concluded not to enforce the obligation of complainant. The contract, if it ever was one, has run out by its own terms, and is no longer of any validity.

Leaving this transaction out of view, the result was, in October, 1873, that M. J. Haralson was still indebted to the complainant, by note of the 10th of November, 1872, for $1,000, with 10 per cent. interest, and by a balance on the note of the 25th of July, 1873, of $140, with like interest. In this state of affairs the defendant J. H. Haralson comes to the front. On the 25th of October, 1873, he obtains from complainant a paper writing, certifying that he had that day contracted with said J. H. for 1,000 cords of wood, " now standing in the woods near Goodlettsville, and the E. & K. R. R.; at 75 cents per cord, as it now stands," the same to be placed as a credit on M. J. Haralson's notes. At that time J. H. Haralson owned no land or wood, so far as appears, near Goodlettsville. On the 27th of October,

1873, two days afterwards, he makes a trade with John L.. Hadley, and receives from him the following paper writing :

"*October 27, 1873.*

"As a consideration of 100 cords of merchantable cedar timber, to be delivered on the banks of Cumberland river, twelve months (or within that period) from date, I have transferred to J. H. Haralson my flock of thirty-seven goats, and bind myself in addition, when said timber is delivered, to convey to him a deed to ninety acres of land,. lying in the county of Sumner, state of Tennessee.

"JNO. L. HADLEY."

Hadley's deposition was taken in this cause on the 9th of February, 1874, and he therein states that no part of the recited consideration had then been paid. He gave, he says, for the land a mare and a young jack, "neither of which was of much intrinsic worth." He had paid for the jack $30. It is probable the flock of goats was the chief item in the trade, in the view of Haralson, for they are sufficiently described, whereas the description of the land is too vague to ascertain the particular tract sold, and, as to it, the contract is obviously void for uncertainty. *Dobson* v. *Litton*, 6 Coldw. 616.

Armed with this document, J. H. Haralson, who had never seen the land, makes an engagement with complainant to take him up to see the timber on the supposed tract near Goodlettsville, with his father, M. J. Haralson, who had seen the land. By sheer accident, according to the Haralsons, they met a man by the name of Neal, an old friend of the Haralsons, from Wilson county, then stopping at the house of the elder Haralson, and took him along. The timber on this place is, of course, greatly admired and largely commented on. As they return to Nashville they stop at a wayside grocery and buy a bottle of whisky and some cakes, and, thus enlivened, discuss the feasibility of making a fortune in the wood trade. Neal thinks the timber is cheap at 75 cents a cord, and that he can probably

undertake to deliver it at Nashville for $3.75 a cord. If this can be done, complainant is induced to think he can make money by selling it. This was the 2d of November, 1873, and Sunday. That night, at the house of M. J. Haralson, J. H. Haralson, in the presence of Neal, as he (Neal) tells us in his deposition, drew up all the necessary papers to consummate a trade with complainant upon the basis above suggested. Early the next morning he and Neal go to complainant's place of business, and, after taking a drink—doubtless to the frequent happy returns of such Sundays as the day before—J. H. Haralson produces his papers and undertakes to read them to complainant, and procures his signature to them; and on that or the next day takes up his father's notes, and obtains from complainant a note for $360 to boot, and on the same day gets $210 of the note paid to him in cedar lumber and other things. Such a transaction, it is obvious, deserves to be closely scrutinized, to say the least, if there are any circumstances tending to arouse the suspicions of the court, growing out of the relations of the parties or their respective characters.

The proof is clear that complainant is a simple-minded, uneducated, and confiding man. His signature conclusively shows that he can barely scratch his name, and there is nothing to throw doubt on his assertion that he reads writing with great difficulty, and is compelled to rely upon others to read it for him. Neal, whose sympathies are all with the defendants, and at whose house the elder Haralson was living when his deposition was taken, says that complainant did not read the papers which were signed by him, but they were read to him by J. H. Haralson—twice, says the witness. The proof is clear that wood in the tree, at the distance from Nashville and from the railroad as the tract in question, was worth from 10 to 25 cents per cord, according to quality and object of use, and that the land, timber, and all were worth, perhaps, $1 an acre, or thereabouts. The complainant was grossly imposed upon, and

with such a concatenation of circumstances as to look very like design. Mere feebleness of intellect, not amounting to imbecility, is, of course, not sufficient to justify the court in annulling contracts. But feebleness of intellect, coupled with facts tending to show actual imposition, would be sufficient.

In this case it is not absolutely necessary to put a decision upon this ground. When I come to examine the instruments themselves, upon which the complainant is sought to be bound, I find them fatally defective. These instruments, it will be remembered, were drawn up by J. H. Haralson, on the night of the 2d of November, 1873, and complainant's signature to them was procured on the morning of the 3d of November. They consist of the following series:

1st. An order of complainant on Haralson requesting him to let Neal have "the two thousand cords wood that I bought of you on your land, standing in the tree, and I will pay you the 75 cents per cord, as per our agreement, and satisfaction on return of this order." Endorsed: "Received this order November 3d, 1873." Signed, J. H. Haralson.

2d. A certificate from Haralson that Neal is authorized to cut 2,000 cords of wood "off my land, in Sumner county, at any time within the next twelve months."

3d. A certificate of complainant that he has contracted with Neal to cut and deliver 2,000 cords of wood "off of J. H. Haralson's land, in Sumler Co.," for which he agrees to pay Neal $3.75 per cord as fast as he may deliver the same in the city of Nashville.

The first remark that occurs upon reading these papers is that there is no contract upon the part of either Haralson or Neal, the one to sell and the other to deliver the wood, which constituted, of course, the consideration for the surrender of M. J. Haralson's notes. Without an obligation by these individuals corresponding with the obligation of complainant there is no contract between the parties, and the promise of the complainant becomes a nudum pactum. The order of complainant on Haralson promises to pay 75

cents per cord, " as per our agreement." But where is this. agreement? It must be in writing, of course ; otherwise, it. would be void by the statute of frauds, for it relates to. wood " standing in the tree," which, according to the. weight of authority, and still more of reason, is realty. *Rodwell* v. *Phillips*, 9 M. & W. 501 ; *Smith* v. *Surman*, 9. B & C. 561 ; *Scovell* v. *Boxall*, 1 Y. & J. 398 ; *Green* v. *Armstrong*, 1 Denio, 554 ; *McGregor* v. *Brown*, 10 N. Y. 117 ; *Pattison's Appeal*, 61 Penn. St. 294 ; *Teal* v. *Auty*, 2 B. & B. 99 ; *Slocum* v. *Seymour*, 36 N. J. 138. ; *Hutch- ins* v. *King*, 1 Wall. 53 ; *Howe* v. *Batchelder*, 49 N. H. 204..

If the reference be to the agreement of the 25th of October, 1873, that is only for 1,000 cords, is for wood " now standing in the woods," and is only signed by complainant. If the order was intended to. embody the agreement for 2,000 cords, it would not avail the defend- ant, for it is not signed by him, nor does he undertake to. sell the timber. His endorsement on the back is, simply,. " received this order," without promising anything. And, if you try to couple with this Haralson's order to. Neal (which you cannot do without a special reference. in the one instrument to the other, *Blair* v. *Snodgrass*, 1 Sneed, 1), you find that that is not a recognition of complainant's absolute title to the wood, or a sale. of it to him or his agent, but a mere license to cut. the timber, limited to twelve months. So that, if Mr. Neal chose not to cut any timber for twelve months, and. he has nowhere obligated himself to cut it at any time, complainant would get nothing at all. It is obvious, more- over, that no specific land is mentioned, by which complain- ant, if his right were disputed, could fix it upon any tract. And, as we have already seen, the contract with Hadley is. void for uncertainty, so that defendant J. H. Haralson has no land and no timber to sell. The transaction, so far. as complainant is concerned, is clearly void for uncertainty. and for want of any consideration whatever.

The complainant is entitled to a decree setting aside the.

·transaction *in toto*, and to a decree against M. J. Haralson · for the amount of his note of the 10th of November, 1872, . and for the balance of the note of the 25th of July, 1873, with 10 per cent. interest, and against J. H. Haralson for the . amount of the credits on the note of $360 (which is can- · celled), with interest. The complainant must pay rent for · the lot after the partnership with J. H. Haralson ended, to be credited on the debt of M. J. Haralson, as of the time · when complainant surrendered possession to the receiver. · The costs will be paid by the defendants. The lot will be ; sold to satisfy the decree against M. J. Haralson if the · decree is not otherwise paid.