The **CHESHIRE MEDICAL CENTER**

v.

**W.R. GRACE & CO., W.R. Grace & Co.—Conn.**

**Civ. No. 88–516–D.**

United States District Court, D. New Hampshire.

May 16, 1991.

Michael P. Hall, Manchester, N.H., for plaintiff.

Victor Koufman, Manchester, N.H., for defendants.

## ORDER

DEVINE, Chief Judge.

In this diversity action, plaintiff The Cheshire Medical Center ("Cheshire") alleges that defendants manufactured asbestos fireproofing that was incorporated into plaintiff's buildings between 1971 and 1972, that those products are hazardous and must be removed, and that defendants must pay for their removal. Still pending are seven theories of liability: strict liability, negligence, breach of express and implied warranties, fraud and misrepresentation, conspiracy, and restitution.[1]

Presently before the court are (1) defendants' motions for summary judgment for lack of standing and for expiration of the statute of limitations, and (2) plaintiff's motion for partial summary judgment.

### I. Standing

Cheshire brought this suit in December 1988 to recover the costs of removing defendants' asbestos fireproofing[2] installed between 1971 and 1972. During the course of discovery, defendants became aware of the fact that the New Hampshire Higher Education and Health Facilities Authority ("the Authority") holds legal title to the property at issue. Therefore, defendants argue, Cheshire has no standing to bring this action.[3] A brief history of the Authority and its relationship with the Hospital necessarily follows.

The Authority was originally formed as the New Hampshire Higher Educational Building Corporation for the purpose of

1. The court dismissed plaintiff's nuisance count by order dated June 8, 1989.

2. The product is known commercially as Monokote–3.

3. Defendants' motion claims lack of standing under Rule 17(b), Fed.R.Civ.P. Rule 17(b), however, addresses capacity to sue, rather than standing. As defendants' memorandum of law in support of their motion refers to Rule 17(a) and "real party in interest", the court will analyze the instant motion under Rule 17(a), which requires, *inter alia*, that every action be "prosecuted in the name of the real party in interest."

permitting private, nonprofit educational institutions in New Hampshire to borrow money for construction projects by the issuance of tax-exempt bonds. Memorandum of Law in Support of Plaintiff's Objections to Motions for Summary Judgment for Lack of Standing and Expiration of Statutes of Limitations ("Plaintiff's Memo"); Affidavit of Richard B. Stewart at ¶ 3. In 1970, the Authority was permitted to issue bonds on behalf of private, nonprofit hospitals in New Hampshire. *Id.* at ¶ 4. The Authority borrows money by issuing the bonds, then lends the money to the true borrower, which must be a private, nonprofit corporation. *Id.* at ¶ 6.

The Authority is prohibited from pledging its or the state's credit to the repayment of the bonds. Instead, the pledge to repay is supported by security and revenues received from particular borrowers. The security generally consists of a combination of the borrower's revenues and property rights. The Authority's statute, New Hampshire Revised Statutes Annotated ("RSA") 195–D, permits it to secure loans by taking title to either the borrower's real or personal property or the financed project, in which case it leases the property and the project back to the owner. The Authority can also take a conventional mortgage and security interest without taking title. *Id.* at ¶ 10.

The first project financed by the Authority was the 1971 construction of the property at issue here, a new facility of the Elliot Community Hospital of Keene, now known as the Cheshire Medical Center. At that time, the Authority issued $9,450,000 in revenue bonds. *Id.* at ¶¶ 20, 21, 22. As partial security for the Hospital's obligation to repay—through the Authority—the bonds, the Hospital deeded its real and personal property (consisting of the new facility) to the Authority, which the Authority leased back to the Hospital, subject to the Hospital's right to have the property reconveyed to it upon its repayment of the bonds. *Id.* at ¶ 24. In addition, the Hospi-

tal pledged its revenues to the Authority for as long as the bond debt was outstanding. *Id.* at ¶ 25.

The provisions of the Agreement and Lease between the Authority and the Hospital require the Hospital to pay all taxes assessed against the real estate; to provide insurance on the property; to pay for all maintenance, replacement, and repairs to the property and equipment; and to fund use of the new facility. Also, the Authority and the Hospital agreed that the Authority as owner would expend no funds and incur no liabilities on the facility. Finally, the parties agreed that the Authority would reconvey the property to the Hospital and terminate the lease when the Hospital paid off its bond obligations. *Id.* at ¶ 29; *id.* Exhibit 1. The Authority had no role in hospital construction except to approve payment invoices. *Id.* at ¶ 30.

In 1989 Cheshire issued an additional $10,545,000 in bonds through the Authority. As part of the 1989 bond issuance, the Authority retained title to Cheshire's property until 1993, when the 1971 bonds will be fully repaid. At that time, the Authority will deed the property back to the hospital. *Id.* at ¶ 37. At the time of the 1989 bond issuance, the Hospital and the Authority agreed that all of the Hospital's obligations under the 1971 bonds were satisfied. Therefore, the Hospital cannot default on the 1971 obligations, and its redemption of the property is secured. The Authority, however, cannot redeed the property back to the Hospital until the 1971 bonds' stated maturity date in 1993. *Id.* at ¶¶ 40–41; *id.* Exhibit 2.

The defendants argue that the Hospital's interest in the property is limited to that of a lessee, whose rights are confined to protecting its possessory interests. In New Hampshire,[4] "[a] lessee may maintain an action for a nuisance to the real estate which he occupies, which is injurious to his possessory interest; while the landlord must bring the action for any injury to the

---

**4.** In a diversity case, the federal district court must look to the substantive law of the forum state to determine whether the complainant is the real party in interest within the meaning of Rule 17(a). *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984); 3A *Moore's Federal Practice* ¶ 17.07.

reversion." *Leary v. Manchester,* 90 N.H. 256, 257; 6 A.2d 760, 761 (1939).

In the court's view, however, the defendants' characterization of the relationship between the Hospital and the Authority as being strictly that of a lessor and a lessee is too narrow. The Hospital and the Authority agree that the original conveyance to the Authority was as security for the 1971 loan and is subject to the Hospital's 1993 right of redemption. In *White v. Ford,* 124 N.H. 452, 471 A.2d 1176, 1178 (1984), the court held that the intentions of the parties control the nature of the conveyance and that the court must consider extrinsic evidence to determine the parties' intent. *Id.* at 455, 471 A.2d 1176. *See also Fisher v. Koper,* 127 N.H. 330, 499 A.2d 1001 (1985) (extrinsic evidence showed that deed was given as mortgage and not as absolute deed).

As the Supreme Court noted in *Hutchins v. King,* 68 U.S. (1 Wall.) 53, 17 L.Ed. 544 (1863), "In few states is the equitable doctrine respecting mortgages more clearly asserted than in New Hampshire...." *Id.* 68 U.S. (1 Wall.) at 58. This doctrine looks "through the form to the real character of the transaction, that a mortgage is a mere security for a debt ... and that the equity of redemption is the real and beneficial estate in the land...." *Id.* The *Hutchins* Court relied on *Southerin v. Mendum,* 5 N.H. 420 (1831), in which the New Hampshire Supreme Court held that while a mortgagee is treated as the owner of land for purposes of preserving a security interest, for other purposes the law looks "beyond the mere form of the conveyance to the real nature of his interest...." *Id.* at 429–30.

In the instant action, Cheshire, the mortgagor with a right of redemption that is for all practical purposes certain to occur, is the equitable owner of the property. In addition to the stated intentions of the parties with respect to the deed, Cheshire is the sole occupant of the property and is responsible for all maintenance and repairs, including the removal of the defendants' asbestos products at issue here. In sum, Cheshire is the party who, according to New Hampshire law, possesses the right sought to be enforced. *See* C.A. Wright, *Law of Federal Courts* § 70 (4th ed. 1983). Accordingly, the court finds that Cheshire is the real party in interest within the meaning of Rule 17(a), Fed.R.Civ.P.

## II. Statute of Limitations

■ Defendants argue that plaintiff's claims of negligence, product liability, fraud and misrepresentation, and conspiracy are barred by the six-year statute of limitations applicable to personal actions. RSA 508:4. Defendants further maintain that Cheshire's warranty and restitution claims are barred by the four-year statute of limitations on sales. RSA 382–A:2–725(1) and (2).

■ New Hampshire's statutes of limitations are subject to two tolling provisions—the "discovery rule" and the doctrine of fraudulent concealment. Ordinarily, a personal cause of action accrues at the time damage occurs. However, the discovery rule provides that a cause of action does not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, that he was injured as a result of defendant's conduct. *Town of Hooksett School District v. W.R. Grace & Co.,* 617 F.Supp. 126 (D.N.H. 1984). When facts essential to the cause of action are fraudulently concealed from a plaintiff by a defendant, the statute of limitations is tolled until the plaintiff discovers or reasonably should have discovered those facts. *Shillady v. Elliot Community Hospital,* 114 N.H. 321, 320 A.2d 637 (1974).

Defendants' statutes of limitations argument is heavily dependent on their prior claim that the State of New Hampshire or the Authority, as the holder of legal title to the Hospital property, is the real party in interest. With respect to the personal actions in Counts I, II, V, and VI, defendants present evidence that indicates that the State of New Hampshire had various forms of notice of the dangers and presence of asbestos as far back as 1973, but no more recently than 1981. Thus, according to defendants, this action became time-barred in

1987. Defendants' Memorandum of Law in Support of their Motions for Summary Judgment ("Defendants' Memo") at 10–11.

The defendants' discovery-rule argument, however, makes no reference to when or whether Cheshire, which the court has found, *supra,* to be the proper plaintiff in this action, had any knowledge of, or should have discovered, the presence or danger of asbestos. Cheshire asserts that the Hospital's construction specifications make no reference to asbestos, and it first became aware of the presence of asbestos in May 1987. Plaintiff's Memo at Exhibit C; Affidavit of Terry Frazier.

Nor do defendants discuss the tolling doctrine of fraudulent concealment, which New Hampshire has long observed in order to avoid giving "a wrongdoer the advantage and benefit of his fraudulent concealment of a cause of action until the statute of limitations has run." *Lakeman v. LaFrance,* 102 N.H. 300, 303, 156 A.2d 123, 126 (1959). Here, plaintiff's fraudulent-concealment argument is supported by evidence which indicates defendants' knowledge of the hazards of asbestos long before the use by the Hospital, Plaintiffs' Memo at Exhibit D, Affidavit of Counsel, and that defendants concealed those dangers.

Applying either tolling doctrine to RSA 508:4, the court concludes that Courts I, II, V, and VI were timely filed on December 23, 1988.

■ The statutes of limitations on Counts III (breach of implied warranty) and IV (breach of express warranty) are contained in RSA 382–A:2–725, which provides:

**382–A:2–725 Statute of Limitations in Contracts for Sale.**

(1) An action for breach of contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

(3) Where an action commenced within the time limited by subsection (1) is so terminated as to leave available a remedy by another action for the same breach such other action may be commenced after the expiration of the time limited and within six months after the termination of the first action unless the termination resulted from voluntary discontinuance or from dismissal for failure or neglect to prosecute.

(4) This section does not alter the law on tolling of the statute of limitations nor does it apply to causes of action which have accrued before this chapter becomes effective.

■ In this case tender of delivery occurred in 1971 or 1972. Plaintiff again relies on the tolling provisions of the discovery rule and fraudulent concealment. The discovery rule has not been extended to contract actions in New Hampshire. *City of Manchester v. National Gypsum Co.,* 637 F.Supp. 646, 653 (D.R.I.1986) (applying New Hampshire law) (citing *French v. R.S. Audley, Inc.,* 123 N.H. 476, 479, 464 A.2d 279, 282 (1983)); *University Systems of N.H. v. National Gypsum,* No. 84–716–L (D.N.H. July 2, 1985). However, the fraudulent concealment exception seems to toll the statute of limitations in breach of warranty actions. Comment (3) to RSA 382–A:2–725 provides, in relevant part,

(3) **Lack of Knowledge.** In accord with the general rule of subsection (2) that the statute runs from the breach rather than knowledge thereof, see *Hamlin v. Oliver,* 77 N.H. 523, 93 A. 966 (1915), and cases cited, establishing an exception for cases of fraudulent concealment.

Although plaintiff has adequately pled fraudulent concealment, defendants argue further that these counts are barred be-

cause plaintiff has failed to comply with the notice provisions of RSA 382–A:2–607(3), which provides:

> (3) Where a tender has been accepted (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.

New Hampshire case law has reiterated the notice requirement. *H.G. Fischer X-Ray Co. v. Meredith*, 121 N.H. 707, 711, 433 A.2d 1306, 1308 (1981); *Elliot v. Lachance*, 109 N.H. 481, 484, 256 A.2d 153, 155–56 (1969). In this case, defendants claim that plaintiff never gave notice of its breach of warranty claim prior to filing suit.[5] Defendants' Memo at 10. Plaintiff does not allege that it ever gave notice, nor does it even contest the legal issue. Accordingly, plaintiff's Counts III and IV are time barred.

■ In their motion, defendants assert that plaintiff's restitution claim (Count VII) also falls within the ambit of RSA 382–A:2–725 and RSA 382–A:2–607(3) and should therefore be dismissed. The court disagrees. As noted *supra*, RSA 382–A:2–725(1) provides, *inter alia*, that *"an action for breach of any contract for sale* must be commenced within four years after the cause of action accrues...."* (Emphasis added).[6] Likewise, RSA 382–A:2–607(3)(a) refers specifically to breach of contract. The doctrine of restitution, however, does not require an express contract. *Presby v. Bethlehem Village Dist.*, 120 N.H. 493, 495, 416 A.2d 1382, 1383 (1980).

■ A claim for restitution "may arise from the receipt of any benefit the retention of which is unjust." *Cohen v. Frank Developers, Inc.*, 118 N.H. 512, 518, 389 A.2d 933, 936–37 (1978) (citing *State v. Haley*, 94 N.H. 69, 72–73, 46 A.2d 533, 535 (1946)). A plaintiff is entitled to restitution if he shows that there was unjust enrichment either through wrongful acts or pas-

sive acceptance of a benefit that would be unconscionable to permit the defendant to retain. *Id.*

The instant restitution claim is premised not upon any contract between plaintiff and defendants, but rather upon defendants' alleged receipt of the benefit of plaintiff's taking on the asbestos-removal responsibility which, *arguendo*, belongs to defendants. Therefore, the court finds that the statute of limitations and tolling provisions of RSA 508:4, which rendered Counts I, II, V, and VI timely, has the same effect upon Count VII.

### III. Plaintiff's Motion for Partial Summary Judgment on Product Identification

■ Cheshire alleges that the fireproofing insulation spray applied to the hospital's structural steel during construction was manufactured, distributed, and sold by defendants. Cheshire further alleges that no contrary facts exist on the issue of product identification, and therefore partial summary judgment is appropriate. Plaintiff supports its motion with a plethora of documentary and affidavit evidence, which, it argues, "over-whelmingly demonstrate Cheshire is entitled to the requested relief." Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment at 2.

The court first addresses plaintiff's evidence. At the outset, the court notes that plaintiff's Exhibit B, the granting by the United States District Court for the District of Colorado of partial summary judgment on product identification, is in no way dispositive of this case for the simple reason that the defendant there "did not dispute the fact that the asbestos-containing fireproofing ... was manufactured by the defendant." *Id.* As evidenced by the record in this case and the objection to the

---

**5.** Consistent with its position that Cheshire is not the real party in interest, defendants' motion states that the "State" never gave the required notice. While the state's actions are not relevant here, absent even a bare allegation by plaintiff that it did give the notice, the warranty and restitution claims must fail.

**6.** *See also* Quinn, Uniform Commercial Code Commentary and Law Digest (1990 Supp. No. 2) at S2–600 (2–725(2) controls suits based on *breach of warranty*. Other counts, e.g., negligence and strict liability, are not controlled by 2–725(2)).

instant motion, no such acquiescence exists here.

The rest of the documents include: architect specifications designating Monokote as an approved fireproofing, *id.*, Exhibit C; the general contractor's written communication to the fire-proofing contractor that Monokote would be used, *id.*, Exhibit D; and a request by the general contractor for a sample of Monokote from the subcontractor, *id.*, Exhibits E–G. Other documents indicate that the subcontractor ordered a total of 2,250 bags of Monokote from Grace, *id.*, Exhibit H, and that Grace delivered the product directly to the hospital from August 1971 to October 1971. *Id.*, Exhibit I.

In addition, the Grace laboratory concluded that samples of fireproofing at Cheshire "resemble [Monokote]," *id.*, Exhibits N, O, and a laboratory retained by plaintiff has concluded that the fireproofing at Cheshire is Monokote. *Id.* Exhibit Q.

Finally, plaintiff includes the affidavit of Richard M. Connor, president of the plastering and fireproofing subcontractor on the Cheshire construction site. *Id.* Exhibit L. In his affidavit, Connor maintains he was "personally involved in overseeing" the job. *Id.* at ¶ 2. He also "remember[s] that the sprayed fireproofing product that [the subcontractor] installed throughout the hospital during its construction was Monokote manufactured by W.R. Grace ...," and that this memory is "confirmed" by reference to many of the documents discussed above. *Id.* at ¶ 3.

Defendants' objection relies exclusively on Connor's deposition, taken approximately one month after the aforementioned affidavit. Foremost among the relevant facts to which Connor testified was that Cafco, an asbestos-containing fire-proofing manufactured by U.S. Minerals, was installed at the hospital. Defendants' Memorandum of Law in Support of Their Objection to Motion for Partial Summary Judgment at 4–5 (citing Connor Deposition at 157–80). In addition, Connor testified that he did not

see Monokote being applied or stored at the Cheshire site.[7] *Id.* at 6 (citing deposition at 85–86, 116).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. Once the movant demonstrates an "absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the latter must establish the existence, by admissible evidence, of a genuine, material factual issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990).

The issue before the court is the identity of the manufacturer of the asbestos fireproofing at Cheshire. In viewing the record in the light most favorable to defendants, *Garside, supra*, at 48, the court finds that defendants, via Connor's deposition testimony, have created a factual dispute as to the identity of the products at issue. While plaintiff's evidence points to the conclusion that defendants' product was installed, Connor's testimony calls that conclusion into question. The court cannot find as a matter of law that the fireproofing installed at the Cheshire Medical Center was necessarily that of the defendants. Accordingly, plaintiff's motion for partial summary judgment is denied.

### Conclusion

For the reasons stated herein, defendants' motion for summary judgment for lack of standing (document no. 20) is denied, and defendants' motion for summary judgment for expiration of the statutes of limitations (document no. 17) is denied as to Counts I, II, V, VI, and VII, and granted as to Counts III and IV; plaintiff's motion for

---

7. As the court finds these factual allegations sufficient to defeat the instant motion, it need not go into the details of defendants' citation of numerous other purported inconsistencies in Connor's deposition.

partial summary judgment (document no. 22) is denied.

SO ORDERED.