**Marianne L. SINCLAIR**

v.

**Milo H. BRILL, et al.**

**Civ. No. 91–377–JD.**

United States District Court,
D. New Hampshire.

March 4, 1994.

Thomas P. Connair, Claremont, NH, for plaintiff.

David P. Slawsky, Concord, NH, for defendants.

## ORDER

DiCLERICO, Chief Judge.

Plaintiff Marianne L. Sinclair seeks damages from defendants Milo H. Brill and Barbara D. Brill for their allegedly abusive behavior occurring throughout the 1970s and for a particular incident that occurred on March 30, 1972. The plaintiff's complaint is in three counts: assault and battery, negligence and intentional infliction of emotional distress. The court has jurisdiction pursuant to 28 U.S.C.A. § 1332(a) (West 1993). The defendants have filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56(c) (document no. 30). For the following reasons, the court denies the motion.

[pl]aintiff was born on August 9, 1959. [H]er deserted her family in 1963 and [fa]ther died in 1970. After her mother's [death], the Sullivan County Probate Court [plac]ed her under the guardianship of Milo [B]rill, her half-brother, and Barbara Brill, his wife. At the time, Mr. Brill, an Army medic, was stationed at Fort Devens in Massachusetts.

The plaintiff claims that on March 30, 1972, Mr. Brill made her kneel on a hard floor to punish her for losing the belt to her coat. Because she felt ill, the plaintiff repeatedly tried to stand up but was beaten down with a belt. Mr. Brill eventually hogtied her so she could not get up or move. He then gagged her with a dish towel so that the neighbors would not hear her screams. Shortly thereafter, he left the room. While he was gone, the plaintiff vomited, aspirated her vomit, stopped breathing and lost consciousness. At the request of his wife, Mr. Brill returned to the room and applied first aid to restore the plaintiff's breathing.

The defendants took the plaintiff to the Cutler Army Hospital emergency room at Fort Devens. She was later transferred to the Chelsea, Massachusetts, Naval Hospital, where she remained until May 19, 1972. As a result of the defendants' actions that night, the plaintiff suffers from severe cortical blindness—an eyesight defect characterized by loss of peripheral vision—and a seizure disorder.

In addition to the March 30, 1972, incident, the plaintiff claims she was the victim of other acts of abuse. She states she was forced to wear a chastity belt made from a sanitary napkin wrapped in sandpaper; her genital area was covered with a nail-biting solution because she masturbated; she was tied to her bed for long periods of time; and she was tied to a chair and beaten with a belt or a cheese board because she lied, was disrespectful and showed no respect for the property of others. The plaintiff contends this type of punishment continued from 1970 until she left the defendants' home in 1976. The defendants admit the facts of the March 30, 1972, incident, but deny the plaintiff's characterization of those facts. They deny the plaintiff's other allegations of abuse.

The plaintiff claims that because she was lied to by the defendants she did not understand the cause of her injuries. She asserts the defendants claimed that her blindness was caused by hysteria and that her seizures were caused by medication she received at Chelsea Naval Hospital. They subsequently informed her that her seizures were hereditary. When the plaintiff asked for her medical records, she was told the records had been destroyed by a fire.

The plaintiff acknowledges that she never suffered from any memory loss and has always remembered both the March 30, 1972, incident and the other acts of abuse. She claims, however, that as a result of the abuse and deception by the defendants she developed a "psychological coping mechanism" characterized by disassociation from the experience of abuse, "self-blame, denial, depression, embarrassment, shame, and distress." Affidavit of Dr. Philip A. Lindsay ("Lindsay Aff."), ¶ 5. She believed "that she was guilty and deserved all of the cruelty, punishment and abuse that she had received as a child." *Id.* at ¶¶ 4, 5. The plaintiff asserts she was traumatized to the extent she could not "explore or understand what happened to her in a rational manner" until October 1988, when she suffered a grand mal seizure. At that time she finally obtained her medical records, discovered the cause and extent of her injuries and began to understand the significance of the defendants' acts.

The plaintiff brought this action in August 1991. The defendants subsequently filed a motion on the pleadings arguing that the plaintiff's action was time barred. In its February 8, 1993, order, the court ruled that New Hampshire's statute of limitations applied and that the plaintiff had presented sufficient allegations in the pleadings to invoke New Hampshire's discovery rule, which states that an action must be brought within three years of the time a plaintiff should have discovered his or her injury and its relationship to the complained of act. *Sinclair v. Brill*, 815 F.Supp. 44, 50 (D.N.H. 1993); *see* N.H.Rev.Stat.Ann. ("RSA")

§ 508:4, I (Supp.1993). The defendants now bring a motion for summary judgment asserting that certain statements the plaintiff made during her deposition testimony and in her answers to interrogatories establish that the discovery rule is inapplicable to this action.

*Discussion*

The defendants argue they are entitled to summary judgment on all counts because the action is barred by the statute of limitations. Memorandum in Support of Defendants' Motion for Summary Judgment at 4. The plaintiff contends that due to both the defendants' fraudulent concealment and her emotional trauma, she was unable to "commence a legal action" until October 1988. *See* Memorandum of Law in Support of the Plaintiff's Objection to Motion for Summary Judgment at 3, 11.

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Medicine,* 976 F.2d 791, 794 (1st Cir.1992). It is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The defendants bear the initial burden of establishing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Quintero de Quintero v. Aponte–Roque,* 974 F.2d 226, 227–28 (1st Cir.1992). The court must view the entire record in the light most favorable to the plaintiff, "indulging all reasonable inferences in that party's favor.'" *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991) (quoting *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992)). However, once the defendants have made a properly supported motion for summary judgment, the plaintiff "may not rest upon mere allegation or denials of [her] pleading, but must set forth specific facts showing that

there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citing Fed.R.Civ.P. 56(e)).

In the motion for summary judgment, the defendants raise three arguments: (1) the discovery rule cannot be applied to the March 30, 1972 incident because the plaintiff has always remembered the incident; (2) the fraudulent concealment doctrine cannot be applied to the March 30, 1972 incident for the same reason; and (3) the discovery rule does not apply to the other alleged acts of abuse because the plaintiff acknowledges she never repressed her memories of the abuse and New Hampshire has never extended the rule on the basis of emotional trauma.

■ The statute of limitations applicable to this action, RSA § 508:4, I, states:

**Personal Actions**

Except as otherwise provided by law, all personal actions, except actions for slander or libel, may be brought only within 3 years of the act or omission complained of, except that when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.

A tort victim's cause of action accrues and the statute of limitation begins to run at the moment the tortfeasor completes the tortious act. *The Cheshire Medical Center v. W.R. Grace & Co.,* 764 F.Supp. 213, 216 (D.N.H. 1991). In New Hampshire, however, "statutes of limitations are subject to two tolling provisions—the 'discovery rule' and the doctrine of fraudulent concealment." *Id.* Under the discovery rule, "[a] cause of action will not accrue ... until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct." *Rowe v. John Deere,* 130 N.H. 18, 21, 533 A.2d 375, 377 (1987) (citing *Raymond v. Eli Lilly & Co.,* 117 N.H. 164, 371 A.2d 170,

174 (1977)). Under the fraudulent concealment doctrine, "[w]hen facts essential to the cause of action are fraudulently concealed from a plaintiff by a defendant, the statute of limitations is tolled until the plaintiff discovers or reasonably should have discovered those facts." *Cheshire Medical Center*, 764 F.Supp. at 216.

### I. Applicability of the Discovery Rule to the March 30, 1972, Incident

The defendants first argue New Hampshire's "discovery rule" is inapplicable because the plaintiff admits she has always remembered the March 30, 1972, incident. Memorandum in Support of Motion for Summary Judgment at 4. The defendants assert that the plaintiff knew she had been injured by the defendants "long before 1988" and, as a matter of law, the statute of limitations "began to run at the time [the p]laintiff knew that she had suffered some injury as a result of the [d]efendants' actions." Memorandum in Support of Motion for Summary Judgment at 5, 7. The defendants rely upon *Rowe v. John Deere*, 130 N.H. 18, 533 A.2d 375 (1987).

In *Rowe*, the New Hampshire Supreme Court held that the statute of limitations is not tolled when "a person sustains an injury at the time of an accident which, while causing damages characterizable as nominal when compared with later-arising damages from the same incident, nevertheless serves to notify [the person] that [her] rights have been violated." 130 N.H. at 21, 533 A.2d at 376. In so holding, the court refused to extend the discovery rule to assist plaintiffs who raise a claim not on the basis "that the plaintiff was unaware of either [the] injury at the time it occurred or the causal relation between [the] damages and the allegedly negligent [conduct of the defendant], but, rather, that at the time of [the] initial injury, the plaintiff was unaware of the ultimate extent thereof." *Id.*; 533 at 377.

In attempting to establish that the plaintiff falls into this latter category of persons, the defendants offer the following answer to an interrogatory requesting the plaintiff to summarize the content of all discussions she has had concerning the March 30, 1972, incident:

> Several years ago, in approximately 1978, after I received a call from Milo and Barbara Brill at her house, Sherry questioned me as to why I was so frightened.... I explained my fear of them by telling Sherry some of the abuse I suffered as a child. At that time I told her that on March 30, 1972 Milo had beaten me, tied me up, and I vomited, hit my head causing unconsciousness, and then was hospitalized for a long period of time.

Memorandum in Support of Defendants' Motion for Summary Judgment at 9 (quoting Answer to Defendants' Interrogatory 7). The defendants also offer the following deposition testimony:

> Q. In paragraph 20 of your complaint, which is on the next page, at the bottom you say, "The nature and cause of the plaintiff's seizure disorder was not discovered until after plaintiff suffered a grand mal seizure in October of 1988." I want to talk about that for a minute so I understand exactly what's going on here, what that allegation is. You knew you had a seizure disorder after 1972; is that right?
>
> A. No. I knew I had had a seizure, but I did not know I had a seizure disorder.
>
> Q. So, in your own mind, you believed that the seizure that you had suffered or the seizures that you had suffered were an isolated event that would not be repeated?
>
> A. Right.

Memorandum in Support of Defendants' Motion for Summary Judgment at 9 n. 5 (citing Deposition of Marianne L. Sinclair ("Deposition") at 116). The defendants contend that "[u]nder *Rowe*, the distinction [the p]laintiff makes between a seizure and seizure disorder makes no legal difference. What is essential is that the [p]laintiff knew in 1972 that she had suffered injury." *Id.*

■ The fact that the plaintiff knew she suffered an injury implicates the *Rowe* doctrine only if she was also aware of the causal relationship between her injuries and the defendants' conduct. *See Rowe*, 130 N.H. at 21, 533 A.2d at 736. Nowhere in any of the testimony cited by the defendants does the plaintiff assert or infer that she knew in 1972 or any other time before October 1988 that

the defendants' actions caused her blindness or her seizures. The plaintiff has consistently maintained throughout her complaint, court testimony, deposition testimony and interrogatory answers that the defendants concealed the cause of her injuries. The plaintiff has stated that the defendants told her that her blindness was a hysterical condition resulting from her inability to remember in full the events that took place March 30, 1972.[1] *See* Deposition of Marianne L. Sinclair at 112, 116, 120; Defendants' Exhibit B (Answer to Interrogatory 7). Likewise, the plaintiff has consistently maintained that the defendants told her first that the 1972 seizures resulted from the hospital's administering the wrong medication and later that these same seizures resulted from a hereditary condition and that she believed these explanations. *See Sinclair v. Brill,* Hearing on Plaintiff's Petition to Attach with Notice (D.N.H.1991) (No. 91–377–S), Transcript ("Tr.") at 36–41.

*Rowe* is inapposite. In *Rowe,* the plaintiff knew the cause of his injury but did not know the extent of his injury. In the instant case, the plaintiff knew the defendants bound and gagged her but alleges she never knew the causal relationship between the physical abuse and her injuries. The court therefore finds the defendants have failed to support properly their contention that the plaintiff's claims are barred pursuant to *Rowe.*

## II. Applicability of the Fraudulent Concealment Doctrine to the March 30, 1972, Incident

The defendants next argue that despite the defendants' alleged concealment of the plaintiff's injuries, the fraudulent concealment does not extend the statute of limitations. In support, the defendants first assert that because the plaintiff's deposition testimony shows that she knew she was injured in 1972 her injuries were not concealed and therefore, pursuant to *Rowe,* the action is barred. Memorandum in Support of Motion for Summary Judgment at 10. The court need not reiterate its previously stated reasons why *Rowe* does not bar claims premised upon the March 30, 1972, incident.

The defendants also assert that the plaintiff's deposition testimony establishes that she did not exercise reasonable diligence in discovering the cause of her injuries. *Id.* at 10–11. The defendants note that the plaintiff has testified "she did not need the [defendants'] cooperation to obtain the information that ... informed her of her cause of action," and that "her sister and her husband, without assistance from the defendants located the records that provided her with additional medical details about her injuries." *Id.* at 10 (citing Tr. 124). The defendants contend that the "plaintiff's failure to search for those documents at an earlier time constitutes a failure to exercise reasonable diligence." *Id.* at 11. The plaintiff, in her complaint, affidavit, deposition testimony and trial testimony claims she attempted to ascertain her medical condition but was prevented from discovering the cause of her injuries because the defendants provided her with false information regarding the nature and cause of her blindness and seizures and because they insisted that her medical records were destroyed in a fire at the Chelsea Naval Hospital. Complaint, ¶ 20; Affidavit of Marianne L. Sinclair, ¶ 6; Depositions at 112–121; Tr. 18, 25–31, 34; *see also* Memorandum in Support of Plaintiff's Objection to Motion for Summary Judgment at 12.

"[T]he summary judgment standard is a matter of federal law, ... in a federal court federal law determines the respective roles of trial judge, jury and reviewing court." *Villarini–Garcia v. Hospital Del Maestro, Inc.,* 8 F.3d 81, 86 (1st Cir.1993). "Under federal law, '[t]he question whether a plaintiff has exercised reasonable diligence is usually a jury question.'" *Id.* Even where there are no disputed issues of fact, the jury makes the normative judgment as to "what a reasonable person would or should do when faced with a certain amount of information...." *Id.* at 87. Thus, "where a reasonable jury could find that the plaintiff lacked knowledge despite due diligence, the statute of limitations

---

1. The plaintiff is, in effect, claiming that she believed her blindness was due to her inability to recollect some incident *other* than the events she has always remembered and now recognizes as constituting the totality of events that occurred the evening of March 30, 1972.

in a discovery-rule jurisdiction should not be withdrawn from the jury by summary judgment." *Id.*

The court cannot find as a matter of law that reasonable persons would not differ as to whether the plaintiff exercised reasonable diligence. Accordingly, the defendants have failed to establish that the plaintiff is not entitled to the benefit of the fraudulent concealment doctrine.

### III. Applicability of the Discovery Rule to Acts of Abuse other than the March 30, 1972 Incident

■ The defendants finally argue that (1) under New Hampshire law a plaintiff cannot invoke the discovery rule by alleging psychological trauma and (2) even if a plaintiff can invoke the discovery rule, the rule does not apply to this case because the plaintiff admits she has always remembered the acts of abuse alleged in her complaint.[2] Reply to Plaintiff's Objection to Summary Judgment at 8–9. The plaintiff assumes she may invoke the discovery rule and attempts to establish that the rule applies by offering evidence that the nature and extent of her psychological trauma " 'rendered her psychologically unable to commence a legal action....' " Plaintiff's Objection to Defendants' Motion for Summary Judgment at 4 (citing Affidavit of Dr. Philip G. Lindsay).

The New Hampshire Supreme Court has recognized the discovery rule since 1959 and has noted that it serves to prevent "the unfairness that would result if an injured person were foreclosed from bringing an action before becoming aware of its existence." *See Bricker v. Bricker*, 128 N.H. 162, 165, 512 A.2d 1094, 1096 (1986); *Raymond*, 117 N.H. at 169, 371 A.2d at 174. From 1983 on, the New Hampshire Supreme Court broadly applied the discovery rule to all tort actions it considered. *See French v. Audley*, 123 N.H. 476, 479, 464 A.2d 279, 282 (1983); *cf. Black Bear Lodge v. Trillium Corp.*, 136 N.H. 635, 637, 620 A.2d 428, 429 (1993). In 1986, the New Hampshire legislature codified the discovery rule making it applicable to "all personal actions, except actions for slander or libel...." *See* RSA §§ 508:4, I "History" (Supp.1993), 227:22, II (1986). These actions evidence New Hampshire's recognized "general preference for decisions on the merits, demonstrated by [ ] comparatively long statute of limitations for many causes of action." *Keeton v. Hustler Magazine, Inc.*, 131 N.H. 6, 20, 549 A.2d 1187, 1196 (1988) (citing RSA § 508:4; *Kirk v. United States*, 604 F.Supp.

---

**2.** The defendants raise three additional bases in support of their argument, none of which merit protracted discussion. The defendants first assert the court should not consider an affidavit executed by the plaintiff on October 25, 1993, because she "seeks to modify her testimony" to address specific arguments raised in the [motion for summary judgment] by "mirror[ing] the 'testimony' given by her counsel at her deposition." Reply to Plaintiff's Objection to Motion for Summary Judgment at 3–4. Any plaintiff confronted with a summary judgment motion is entitled to submit affidavits that address specific arguments raised in the motion and in many circumstances would be foolish not to submit such documents. Moreover, despite the sinister motives implied by the defendants, the plaintiff's statement is not a "refashioning" of her testimony, but rather an amplification consistent with her prior pleadings and testimony.

The defendants next assert the court should "reject" the affidavit of Dr. Philip Lindsay as inadmissible pursuant to *State v. Cressey*, 137 N.H. 402, 628 A.2d 696 (N.H.1993). Reply to Plaintiff's Objection to Motion for Summary Judgment at 5–6. In *Cressey*, a criminal appeal, the New Hampshire Supreme Court held that an expert's testimony that an alleged victim of sexu-

al abuse exhibited symptoms consistent with those of children who have suffered sexual abuse may not be admitted as evidence of sexual abuse. *Cressey*, 628 A.2d at 699. *Cressey* does not impact the authority of the court to consider Dr. Lindsay's affidavit. The affidavit is not offered to prove that the alleged abuse occurred but offered to support plaintiff's claim that she did not discover the cause of her injuries until 1988.

Finally, the defendants assert that the court is not "allowed" to extend the discovery rule in absence of a supporting state Supreme Court decision or legislative enactment. Reply to Plaintiff's Objection to Motion for Summary Judgment at 7 n. 2. To support this contention, the defendants cite to *Putnam Resources v. Pateman*, 958 F.2d 448, 470 n. 25 (1st Cir.1992) and *Porter v. Nutter*, 913 F.2d 37, 40–41 (1st Cir. 1990). Notwithstanding the fact that there is both decisional law and a legislative enactment to support the court's decision, the court notes that while the First Circuit has warned plaintiff's who bring diversity actions not to expect the district court to "blaze" new "state law trails," *Putnam*, 958 F.2d at 470 n. 25, neither of the cited cases prohibits a district court sitting in diversity from considering an issue of first impression.

1474, 1478 (D.N.H.1985); *Brown v. Mary Hitchcock Memorial Hosp.*, 117 N.H. 739, 743, 378 A.2d 1138, 1140–41 (1977); *Raymond*, 117 N.H. at 170–171, 371 A.2d at 173–74).

Because the New Hampshire legislature has by clear and unambiguous language explicitly extended the discovery rule to all personal actions, it is not necessary for the court to determine whether the plaintiff can invoke the discovery rule for her action.[3] *See Black Bear Lodge*, 136 N.H. at 637–38, 620 A.2d at 430; RSA § 508:4, I. Therefore, the only question before the court is whether, "applying the 'discovery rule,' the plaintiff's action is nonetheless time barred." *Black Bear Lodge*, 136 N.H. at 638, 620 A.2d at 430.

The defendants argue that the plaintiff's admission that she has remembered the acts of abuse from the time of their occurrence prevents application of the discovery rule. Reply to Plaintiff's Objection to Defendants' Motion for Summary Judgment at 9. The plaintiff contends that her dissociative disorder caused a false interpretation of the abusive events such that she did not understand her emotional injuries were caused by the defendants. Plaintiff's Objection to Defendants' Motion for Summary Judgment at 4.

A cause of action does not accrue under the discovery rule "until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only that [she] has been injured, but also that [her] injury may have been caused by the defendant's conduct." *See French*, 123 N.H. at 480, 464 A.2d at 282 (citing *Raymond*, 117 N.H. at 171, 371 A.2d at 174); *Bricker*, 128 N.H. at 165, 512 A.2d at 1096. The discovery rule assists plaintiffs who are aware that they have been injured, but are unaware that their harm was caused by the act of another. *See Hildebrand*, 736 F.Supp. at 1518. However, the discovery rule does not assist a plaintiff who is aware of her injury and the cause of her injury at the time of complained of act and brings an action after the proscribed period has run claiming later-arising damages. *Rowe*, 130 N.H. at 21, 533 A.2d at 376.

Many of the various physical assaults plaintiff alleges—the beatings with belts and wooden bread boards; the beatings over the head with a soup ladle; being tied her bed at

---

**3.** A number of courts have considered whether the discovery rule should be extended to cases where the plaintiff complains of emotional and physical injuries resulting from childhood sexual abuse. Where the discovery rule is selectively applied, the commencement of these actions required courts and legislatures to determine whether childhood abuse is the type of tort to which the discovery rule should be extended. *See generally DeRose v. Carswell*, 196 Cal.App.3d 1011, 242 Cal.Rptr. 368 (1987); *E.W. v. D.C.H.*, 231 Mont. 481, 754 P.2d 817 (1988) (superseded by statute), *O'Neal v. Division of Family Servs.*, 821 P.2d 1139 (Utah 1991); *Tyson v. Tyson*, 107 Wash.2d 72, 727 P.2d 226 (1986) (superseded by statute); Cal.Civ.Pro.Code § 340.1 (Deering 1992) (granting victims of sexual abuse a specified civil remedy wherein the discovery rule is extended as a means of tolling the statute of limitations); Minn.Stat. § 541.073 (1991) (same); Mo.Rev.Stat. § 537.046 (Supp.1991) (same); Utah Code Ann. § 78–12–25.1 (1992) (same); Wash.Rev.Code Ann. § 4.16.340 (1990) (same).

Abuse cases generally involve one of two fact patterns which have come to be known as "type 1" and "type 2" cases. *See Baily v. Lewis*, 763 F.Supp. 802, 805 (E.D.Pa.), *aff'd*, 950 F.2d 721 (3d Cir.1991); *Hildebrand*, 736 F.Supp. 1512, 1521 (S.D.Ind.1990). In type 1 cases the plaintiff never represses the abusive incidents but claims she was unaware her psychological problems were caused by the abuse; in type 2 cases the plaintiff completely represses her memory of the abuse that took place during her childhood until a triggering event occurs. *Baily*, 763 F.Supp. at 805; *Hildebrand*, 736 F.Supp. at 1512; *Johnson v. Johnson*, 701 F.Supp. 1363, 1367 (N.D.Ill.1988) (superseded by statute). While courts are divided over the application of the discovery rule to type 1 cases, the division may be explained by examining the various states' policies toward the discovery rule. Only those states that limit the application of the discovery rule have refused to extend the rule to cases where the plaintiff is alleging psychological trauma. *Compare Hildebrand*, 736 F.Supp. at 1521 (Indiana only applies discovery rule in restricted cases—childhood sexual abuse is not the type of case to which doctrine would be extended); *E.W.*, 754 P.2d at 819 (as general rule mere fact that person does not know of his right to sue does not toll running of statute of limitations—although state supreme court has found discovery rule applicable to limited number of situations, childhood sexual abuse is not the type of case to which doctrine should be extended) *with Hammer v. Hammer*, 142 Wis.2d 257, 418 N.W.2d 23, 25 (1987) (Wisconsin adopted discovery rule for all tort actions—discovery rule applies to cases of childhood sexual assault); *Osland v. Osland*, 442 N.W.2d 907 (N.D.1989) (same).

night; being forced to kneel on broom sticks for long periods of time; and being forced to wear a chastity belt and apply nail biting solution to her genitals—may be characterized as the types of acts that result in immediate cognizable harm. If those acts served to notify her that her rights were violated by the defendants, the assertion that she did not discover the psychological ramifications of these acts until October 1988 would not invoke the discovery rule. *Id.*, 533 A.2d at 376.

 The court finds there is a genuine issue of material fact as to whether the acts of abuse "notified" the plaintiff that the defendants violated her rights. Implicitly, the discovery rule requires that the plaintiff understand that her injury was caused by the wrongdoing of the defendant. *See Raymond,* 117 N.H. at 170, 371 A.2d at 174 (persons cannot be said to have been "sleeping on [their] rights" when person unaware that said rights existed); *see also Bricker,* 128 N.H. at 165–66, 512 A.2d at 1094; *cf. Rowe,* 130 N.H. at 22, 533 A.2d at 377 (where plaintiff is aware of causation, injury must be sufficiently serious to apprise plaintiff that violation of rights may have occurred). The plaintiff's deposition testimony indicated that at the time the abuse took place, she understood the defendants' acts to be "punishments." *See* Deposition at 32; Tr. at 22. She alleges she suffered from self-blame, denial and guilt caused by her "coping mechanism." Lindsay Aff. at ¶¶ 4, 5. She also asserts she could not understand or explore what happened to her as a child until October 1988. *Id.* Construing this evidence in the light most favorable to the plaintiff, a reasonable inference may be drawn that the plaintiff did not understand that the defendants' conduct was wrongful.

The plaintiff's deposition and attachment hearing testimony suggests the defendants perpetrated the acts against her will. This suggestion does not establish that the plaintiff understood the acts were wrongful at the time they occurred.

> Children often have grievances against their parents. To demand that a young child assume the wrongfulness of any parental order, and hold [her]self in readiness to sue upon majority, would be unreasonable. By law and for sound social policies the child must place [her] trust in the parent and submit to parental authority.

*Evans v. Eckelman,* 216 Cal.App.3d 1609, 265 Cal.Rptr. 605, 611 (1990). Therefore, the court cannot find as a matter of law that the plaintiff discovered the causal connection between her injuries and the acts of abuse she alleged prior to October 1988.

### Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (document no. 30) is denied.

SO ORDERED.